CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY v. MIRANDA WYMORE, ADMINISTRATRIX.

FILED MAY 15, 1894.    No. 5168.

1. **Negligence:** QUESTION FOR JURY. Questions of negligence and contributory negligence, where the facts are such that from them different minds may reasonably draw different conclusions, are for the jury and not for the court to determine.

2. **Railroad Companies:** Duties to Persons on Right of Way. A railroad company does not discharge its whole duty by refraining from wantonly injuring a trespasser upon its tracks after observing his position. It is bound in all cases to exercise reasonable care to avoid injuring all persons who are known to be, or who may be reasonably expected to be, upon its right of way.

3. **Release and Discharge:** Railroad Companies: Death of Employe: Damages: Rights of Widow and Children. A railroad company had connected with it a relief department composed of employes who contributed certain amounts from their wages towards an insurance fund for their relief when injured and for the relief of beneficiaries named in case of death. The railroad company collected the funds, furnished the necessary clerical force, and guarantied payment of loss. A member of this association agreed that in consideration of the amounts paid by the company, the acceptance of benefits for injury or death should operate as a release and satisfaction of all claims for damages against the company arising from such injury or death which could be made by him or his legal representatives. He was killed in an accident upon the railroad. The beneficiary named was his widow, who accepted the benefit, and by instrument in writing received it "in full satisfaction and discharge of all claims or demands on account of or arising from the death of said deceased which I now have or can hereafter have" against either the relief fund or the railroad company. Subsequently, as administratrix, she brought suit for damages against the railroad company on behalf of herself and children. *Held,* (1) That the deceased's contract did not of its lf waive a right of action; (2) that neither that contract, nor the acceptance of the money or release of liability by the widow, operated to bar a right of action by the administratrix on behalf of the children; (3) that her voluntary acceptance of the benefit and release of the company did operate to bar any action for her own benefit.

Error from the district court of Custer county. Tried below before Hamer, J.

The facts are stated by the commissioner in the opinion.

*T. M. Marquett* and *J. W. Deweese,* for plaintiff in error: The railroad company is not liable for damages which

result to a person on account of his walking or being upon a railroad track or private grounds of the company at a place where he has no right to be, and other than a public or private crossing recognized as such, except where the company is guilty of wanton or willful. negligence after discovering the position of the person so injured. (*Spicer v. Chesapeake & O. R. Co.*, 12 S. E. Rep. [W. Va.], 553; *Blight v. Camden & A. R. Co.*, 21 Atl. Rep. [Pa.], 995; *Hargreaves v. Deacon*, 25 Mich., 5; *Dlauhi v. St. Louis, I. M. & S. R. Co.*, 16 S. W. Rep. [Mo.], 281; *Ross v. Texas & P. R. Co.*, 44 Fed. Rep., 44; *Woodruff v. Northern P. R. Co.*, 47 Fed. Rep., 689; *Palmer v. Chicago, St. L. & P. R. Co.*, 14 N. E. Rep. [Ind.], 70; *Tennis v. Interstate C. R. T. R. Co.*, 25 Pac. Rep. [Kan.], 876; *Toomey v. Southern P. R. Co.*, 24 Pac. Rep. [Cal.], 1074; *Masser v. Chicago, R. I. & P. R. Co.*, 27 N. W. Rep. [Ia.], 776; *Baumeister v. Grand Rapids & I. R. Co.*, 34 N. W. Rep. [Mich.], 414; *Scheffler v. Minneapolis & St. L. R. Co.*, 21 N. W. Rep. [Minn.], 711; *Philadelphia & R. R. Co. v. Hummell*, 44 Pa. St., 378; *Mason v. Missouri P. R. Co.*, 27 Kan., 83; *Carrico v. West Virginia C. & P. R. Co.*, 14 S. E. Rep. [W. Va.], 12; *Savannah & W. R. Co. v. Meadows*, 10 So. Rep. [Ala.], 141; *Burlington & M. R. R. Co. v. Wendt*, 12 Neb., 76; *Clary v. Burlington & M. R. R. Co.*, 14 Neb., 235.)

The member of the relief association is not bound to accept the benefits due under his contract of membership, nor is his beneficiary bound to accept the same; but it is merely optional with him or his beneficiary. It gives them a choice and an option whether they will bring suit for damages if they think the company is liable, or whether they will accept the benefits under the relief association contract. Such a contract is not against public policy, nor unreasonable, nor void. (*Fuller v. Baltimore & Ohio Employes' Relief Association*, 67 Md., 433; *Martin v. Baltimore & O. R. Co.*, 41 Fed. Rep., 128; *Graft v. Baltimore*

& O. R. Co., 8 Atl. Rep. [Pa.], 206; *Spitze v. Baltimore & O. R. Co.*, 23 Atl. Rep. [Md.], 308; *Owens v. Baltimore & O. R. Co.*, 35 Fed. Rep., 718; *State v. Baltimore & O. R. Co*, 36 Fed. Rep., 655; *Ohio & M. R. Co. v. Heaton,* 35 N. E. Rep. [Ind.], 687.)

Stipulations of settlement and receipts given are held to be good, and enforced in courts of law; and no action can be maintained on account of a cause of action which is settled until the settlement is set aside for fraud or mistake. (*Snider v. Adams Express Co.*, 63 Mo., 383; *Wallace v. Chicago, St. P., M. & O. R. Co.*, 25 N. W. Rep. [Ia.], 772; *Gould v. Cayuga County Nat. Bank*, 86 N. Y., 84; *Pennsylvania R. Co. v. Shay*, 82 Pa. St., 202; *Glenn v. Statler*, 42 Ia., 109; *Butman v. Hussey*, 30 Me., 263; *Moorman v. Collier*, 32 Ia., 138; *Belger v. Dinsmore*, 51 N. Y., 170; *Mateer v. Missouri P. R. Co.*, 16 S. W. Rep. [Mo.], 848; *Hinkle v. Minneapolis & St. L. R. Co.*, 31 Minn., 434; *Guldager v. Rockwell*, 24 Pac. Rep. [Col.], 556.) No action can be maintained where a release has been given, until it has been set aside, and whatever has been received, paid or tendered back. (*First Nat. Bank of Barnesville, O., v. Yocum*, 11 Neb., 328; *East T., V. & G. R. Co. v. Hayes*, 10 S. E. Rep. [Ga.], 351; *Doane v. Lockwood*, 115 Ill., 490; *Oswego Starch Factory v. Lendrum*, 57 Ia., 573; *Gulliher v. Chicago, R. I. & P. R. Co.*, 13 N. W. Rep. [Ia.], 429.)

*J. S. Kirkpatrick*, also for plaintiff in error.

*Sullivan & Gutterson*, contra.

IRVINE, C.

This was an action under chapter 21, Compiled Statutes, by Miranda Wymore, as administratrix of John K. Wymore, deceased, against the plaintiff in error for damages caused by the death of said John K. Wymore. On the 25th day of August, 1890, at about 2 o'clock in the morn-

ing, a special freight train of the plaintiff in error reached the station of Mullen, bound west. The operator at Mullen was instructed by the train dispatcher to hold the special for an east-bound train. The operator gave the order to the conductor, and after the lapse of two or three minutes the train pulled away from the station westward. There was a side track south of the main track with a switch at each end. The special stopped after it had passed the west switch. The brakeman at the rear of the train opened the switch and boarded the train. The train backed upon the side track. After it had passed upon the side track, the brakeman at the front end of the train undertook to close the switch, but his key failed to open the lock. While he was struggling to close the switch the east-bound train came in sight around a curve. There is evidence tending to show that it was running at a rate of about thirty miles an hour. The brakeman signaled it to stop and then renewed his efforts to close the switch. The evidence also shows that an open head-light is a signal that the main track is obstructed and that the head-light of the west-bound special was left open. There is evidence tending to show that the engineer of the east-bound train endeavored to stop his train after he saw the brakeman's signal, but he evidently failed to do so, for the east-bound train entered the switch, collided with the west-bound train, and the result was that the two engines and a number of cars were heaped together upon the two tracks and upon the space between them. Wymore was a section foreman in the employ of the railroad company and resided in a section house upon the right of way of the railroad south of the tracks, west of the station and almost due south of the point where the west-bound engine stood at the time of the collision. A young lady named Wilgus had come to Mullen that day for the purpose of taking a passenger train which was due at Mullen about half past three in the morning. She had gone to Wymore's house and she and

Wymore left the house for the depot about 2 o'clock. When the wreck was cleared away their dead bodies were found beneath the wreck and between the side track and the main track. A public roadway accessible from Wymore's house crossed both tracks between Wymore's house and the station, which was situated north of the main track. The inference is that Wymore and Miss Wilgus, on leaving the house, found the roadway blocked by the west-bound train on the side track, and in the effort to reach the station, crossed the side track at a point almost north from Wymore's house and were proceeding between the two tracks towards the depot when the wreck occurred. There was evidence tending to show that the tracks were at that point from fifteen to twenty-five feet apart. The negligence alleged as constituting the cause of action was the delay of the conductor of the west-bound train in side-tracking his train; the running of the train westward to enter the side track from the west switch instead of from the east; the failure of the company to provide the brakeman with a proper key to the switch, and the running of the east-bound train at a high and dangerous rate of speed as it approached the station and switch. The railroad denies negligence and avers contributory negligence. There was a verdict and judgment for the plaintiff, from which the railroad prosecutes error.

The assignments of error argued relate to the instructions. The second instruction given by the court is as follows:

"Negligence is the failure to observe, for the protection of the interests of another person, that degree of care, precaution, and vigilance which the circumstances justly demand, whereby such other person suffers injury; and in this connection the court instructs you that it was the duty of the railroad company to provide and furnish its employes with proper and suitable machinery, implements, and equipments to operate its trains with reasonable safety.

In considering whether the company has been guilty of negligence, you will inquire whether the switch which led to the side track was kept locked, and whether the company furnished the brakeman, whose duty it was to unlock said switch, a key which the person charged with the duty of furnishing such key had reason to believe was suitable for the purpose intended, and if you find that there was negligence on the part of the company in this particular, and that because of the failure to furnish such key the injury occurred and the death of the deceased was thereby caused, and you further find that the deceased was rightfully upon the premises and killed there by reason of the company's negligence, you will find for the plaintiff; and in considering the question whether the deceased was rightfully upon the premises where his body was found, I instruct you that a railway company has a right to obstruct a public road by permitting its cars to remain upon the same for the period of ten minutes, that a person traveling on foot, after waiting such time, has a right to go around the obstruction, and that if the deceased, after so waiting, went around the obstruction and at the time he did so, was vigilant and careful to avoid apparent danger he was not guilty of contributory negligence."

The first objection to this instruction is based upon the argument that the company owed no duty to a trespasser upon its grounds except where the company was guilty of wanton or willful negligence after discovering the position of such trespasser. A number of cases are cited in support of that argument. The same argument was advanced in the case of *Chicago, B. & Q. R. Co. v. Grablin*, 38 Neb., 90, and this court refused to adopt the doctrine contended for. It is true that no special duty is in such case devolved upon the railroad company in favor of the particular person injured, but the general duty still does remain of operating its trains with due regard to the safety of all persons who are or who may be reasonably expected to be

exposed to danger by reason of any failure to exercise rea-
sonable care.    The consequence of adopting the doctrine
contended for may be illustrated by the language used in
one case in which it is announced, and a case which is cited
by the plaintiff in error evidently for the purpose of call-
ing attention to this particular language.    In *Philadelphia
& R. R. Co. v. Hummell*, 44 Pa. St., 375, the court says:
"There is as perfect a duty to guard against accidental
injury to a night intruder into one's bed chamber as
there is to look out for trespassers upon a railroad where
the public has no right to be."    Surely counsel cannot ex-
pect this court to accept without question the authority of
a case where the author of the opinion has felt compelled
to resort to such language as this to justify the conclusion
reached.    Even in the case cited it is intimated that the
company would be bound to exercise ordinary care,—a
dictum which mitigates to some extent the barbarity of the
language quoted.    What constitutes ordinary care in such
a case depends largely upon circumstances.    We can con-
ceive a case where the right of way of the railroad is pro-
tected by fences, where ample means of ingress are offered
the passenger by absolutely safe methods, and where the
attempt of a person to approach a station along the right
of way would be so hazardous, so difficult, or so unusual
that a jury could hardly be justified in finding that the
company in operating its trains should be required to ex-
ercise any precaution to avoid injuring such persons.    On
the other hand there are many stations in this state where
the station house stands upon the open prairie, where the
means of approach are by roads which are nothing more
than partly beaten paths over the prairie, where the most
convenient and the generally used means of access is over
and along the company's tracks.    In such a case the com-
pany has every reason to expect that persons having occa-
sion to approach its station probably will be found near
the station and along and upon its tracks, and a jury might

reasonably find a company wanting in due care in the operation of its trains under such circumstances where such an inference, under the circumstances first mentioned, would be unreasonable.

It is also objected to this instruction that there was no evidence upon which to found that portion of it wherein the jury was told that negligence might be inferred, in case the facts were so found, from the failure of the company to furnish the brakeman a key suitable for the purpose intended. The evidence upon this point is that this key had been furnished the brakeman the day before; that all the keys and locks upon the line were uniform, the keys being furnished from the supply department through the division superintendent to the brakemen and conductors; that this key had operated by unlocking switches at Alliance the day before, but that repeated attempts to unlock this switch with it proved unavailing. We think this evidence is sufficient to found the instruction. In a matter so important as the proper opening and closing of switches the jury could properly infer that the company was negligent in sending out a brakeman equipped with a key which it was not known would properly control all the locks which he might have occasion to use. The evidence showed without contradiction that this key would not unlock this particular lock, and there was no evidence tending to show that any test had been made of it before the accident or that any precautions had been taken to ascertain its safety.

The third objection made to the instruction quoted is directed to that portion of it which told the jury that the company might obstruct its road for a period of ten minutes, and that a traveler, after waiting such time, had a right to go around the obstruction, and if in doing so he was vigilant and careful to avoid apparent danger, he would not be guilty of contributory negligence. We can see an objection to this language in its reference to the period of ten minutes, which counsel concede was based upon a mis-

taken belief as to the existence of a statute or ordinance. This error operated in favor of the railroad company, for the undisputed evidence was that the west-bound train had not been upon the side track ten minutes when the collision occurred, and the deceased could not have waited for that length of time. Therefore the inference from the instruction would be that he was guilty of contributory negligence as a matter of law in going around the train within that period.

After the jury had retired it returned with the following question: "Had the deceased the right to go upon the premises where he was killed without waiting for the expiration of ten minutes, or was he bound to wait before going around the train?" The first portion of the answer made to this question was as follows : " He was not bound to wait. He had the right to go around the train and if he was vigilant and careful to avoid apparent danger. He was not guilty of contributory negligence simply by going around the train, unless he was struck while standing on the track of the railroad, or so close to it that a train moving upon the track would have extended so far beyond it as to reach him and injure him." The court followed this language by much more, not in response to the question asked, but not in its nature prejudicial to the railroad. We think, however, that there was error in the language we have quoted. The instruction first quoted practically told the jury that attempting to cross the track before waiting ten minutes would constitute contributory negligence. This was error in favor of the company. The instruction last quoted as peremptorily told the jury that attempting to cross at any time was not contributory negligence, provided the deceased was vigilant and careful in crossing. Whether or not such an act would constitute contributory negligence would depend upon circumstances. If one attempts to cross a track, observing a train near him and approaching at a high rate of speed, he might be guilty of

contributory negligence, no matter how alert he might be or how careful he was to avoid injury in making the attempt. The attempt itself might, under such circumstances, be negligence. On the other hand, seeing the west-bound train back upon the switch, if no other train was near, and if the circumstances indicated that the west-bound train was not about to move forward, the attempt to cross in front of it could hardly be said to be negligence. Vigilance in crossing would be a sufficient protection. Under the familiar rule in this state the question should have been left to the jury as to whether or not, under the circumstances of this case, the deceased had observed that degree of caution which a man of reasonable prudence would exercise, not only in the manner of his crossing the tracks and passing along the side track, but in making the attempt to do so at all. For this error we think the cause must be reversed and remanded for a new trial.

The defendant pleaded, and the evidence shows, that an organization existed, of a very peculiar constitution, known as the Burlington Voluntary Relief Department. The scheme of this association was that the employes of this and certain other associated companies contributed certain amounts from their wages to the association. These amounts were withheld by the company from their pay. These payments constituted a species of insurance fund to be paid out to the employe in case of injury or to a beneficiary named by him in his application for membership in case of his death. The railroad furnished the clerical force for the management of the department, kept the custody of the funds, and paid to the association interest upon monthly balances. It also guarantied the payment of losses. The deceased was a member of this association, and the beneficiary named was his wife, the plaintiff herein. His application for membership contained the following provision: "I also agree, that in consideration of the amounts paid and to be paid by said company for the maintenance of the relief de-

partment, the acceptance of benefits from the said relief fund for injury or death shall operate as a release and satisfaction of all claims for damages against said company arising from such injury or death, which could be made by me or my legal representatives." After Wymore's death Mrs. Wymore made application for the payment of the death benefit. It was paid to her, and she at the same time executed and delivered a document acknowledging its receipt "in full satisfaction and discharge of all claims or demands on account of or arising from the death of said deceased which I now have or can hereafter have, whether against the said relief fund, the said Chicago, Burlington & Quincy Railroad Company, or any other corporation associated therewith in administration of their relief departments." In reply she pleaded that this release had been obtained from her by threats upon the part of the company that she and her children would be turned out of the section house unless she executed it. We cannot consider the issue thus raised, for the reason that the court excluded all testimony as to such threats. Upon this defense the court instructed the jury essentially that notwithstanding such transaction, if, upon the other issues, the jury should find for the plaintiff it should allow "such damage as the evidence shows the plaintiff and her children sustained in a pecuniary sense, and no more," and from that sum deduct $500, which was received by the plaintiff from the relief department. This instruction was erroneous. If the contract, either of the deceased or of the plaintiff, was void, the $500 should not have been deducted; but the railroad company could not complain of that error. If, on the contrary, either contract was valid, the instruction was bad for that reason. Similar contracts have been the subject of considerable litigation of late years. We do not think that the general question of their validity is involved in this case. It is argued that they are against public policy, in so far at least as they attempt to relieve

employers from liability for negligence.   It is also argued that they are *ultra vires* of the railroad company, as being contracts of insurance which the railroad has no power to make.   These and similar questions we do not here decide. We are quite satisfied that the deceased did not and could not by such a contract release the company from liability under chapter 21 of the Compiled Statutes, being the act in this state corresponding to that known as "Lord Campbell's Act."   By that act it is provided that whenever the death of a person shall be caused by the wrongful act, negligence, or default, and the act, negligence, or default is such as would, if death had not ensued, have entitled the party injured to maintain an action, then the person who would so be liable shall be liable to an action notwithstanding the death.   We are aware that many cases hold that under such an act, if the party injured had compromised and accepted satisfaction previous to his death, there can be no further action. (Cooley, Torts, 264, and cases cited.) But this contract was not a compromise or satisfaction. The deceased did not waive his right of action, but only provided in the contract that the receipt by his beneficiary of the death benefit should constitute a release, and the constitution of the association in evidence shows in many places that it was contemplated that the member might elect to maintain his action or accept the benefit.   It is true that the supreme court of Maryland has held under a similar state of affairs that where the mother was named as a beneficiary and the widow recovered damages under Lord Campbell's act a similar provision in the contract of membership was a good defense to the association in an action by the mother for the benefit. (*Fuller v. Baltimore & Ohio Employes' Relief Association*, 67 Md., 433.) We have two or three remarks to make, however, about that case. In the first place it was a suit upon a contract in the nature of a contract of insurance, and the result might be justified by a strict construction of the contract.   The posi-

46

tion of the railroad company in an action for damages
might be different.    In the next place, it appears from that
case that the railroad company compelled all its employes
to become members of the association, and we are certainly
not prepared to commit ourselves to the doctrine that a
master may enforce a compulsory agreement to release him
from the consequences of his own negligence.    We are also
aware that in several c..ses it has been held that the release
by a person injured operates as a valid release, and that
the contract in such case is not against public policy.
(*Graft v. Baltimore & O. R. Co.*, 8 Atl. Rep. [Pa.], 206, a
case decided without an opinion and not in the official re-
ports; *Owens v. Baltimore & O. R. Co.*, 35 Fed. Rep., 715;
*Martin v. Baltimore & O. R. Co.*, 41 Fed. Rep., 125.) As
against these federal cases there might be set off the opinion
of Judge Gresham in *Roesner v. Hermann*, 8 Fed. Rep.,
782, declaring a contract with a master seeking to relieve
him from liability for negligence void, as against public
policy.

We repeat that the broad question is not before us.    If
the facts exist as claimed by the plaintiff, the circumstances
were such that Wymore might have maintained an action
had he lived.    He had not waived his right of action.    He
undertook to contract that the beneficiary named in the
contract might waive it by accepting the benefit; but this
action is not for the benefit of his estate, but for that of
his widow and next of kin, and the measure of damages is
not what he might have recovered had he lived, but their
pecuniary loss by reason of his death.    Whether or not he
could, by a compromise after the accident before his death,
deprive them of their right of action, he could not contract
away their rights before the injury and without their con-
sent; nor could he contract that the widow might, after
his death, deprive the next of kin of their remedy.    The
children, of whom there were eight, were not beneficiaries
in the contract, and his contract and the widow's accept-

ance of a sum for her benefit did not discharge the right of action on the children's behalf.   The widow, in accepting her benefit, acted individually and not as an administratrix.   In maintaining this action she proceeds in her representative capacity, and is not estopped, so far as the rights of others are concerned, by her acts as an individual. We think, therefore, that the action could properly be maintained, notwithstanding the deceased's contract of membership and the widow's acceptance of the benefit and release of the company, so far as necessary to enforce the rights of the children.   Plaintiff's position is, however, different. Disregarding the replication of duress as not now presented to us, we must take it that after the cause of action accrued she voluntarily accepted a sum of money in discharge and satisfaction of the company's liability.   A similar case was presented in the case of *State v. Baltimore & O. R. Co.*, 36 Fed. Rep., 655.   The court there considered itself bound upon the question of public policy by the decision of the court of appeals of Maryland in the case we have cited, but added: "It is also to be considered that the release pleaded as a discharge was executed by the plaintiff after the cause of action upon which she sues had arisen.   The insurance upon the life of her husband did not affect her rights at all, as it was made payable to her husband's mother.   She had no contractual relations with either the railroad company or the relief association, and cannot complain of any contract made with her husband as being against public policy, because she is unaffected by any such contract except so far as she herself has chosen to respect it since his death."   The court accordingly held that the release bound her.   We think this reasoning is sound.   She had a right to compromise with the company after her husband's death, so far as her own rights were concerned.   It is suggested that the release in this respect was without consideration, but this is not true.   Under the contract for the insurance she was not absolutely entitled to it, but only be-

came so upon releasing the company. We think that the agreement she so made with the relief department, after the cause of action accrued, for the benefit of the company may be enforced by the company. By the instruction referred to the jury was directed to ascertain the damages which both plaintiff and her children had sustained. The court should have confined the jury to a consideration of the damages sustained by the children.

REVERSED AND REMANDED.

1. **Negligence:** QUESTIONS FOR JURY. Questions of negligence and contributory negligence, where the facts are such that from them different minds may reasonably draw different conclusions, are for the jury and not for the court to determine.

