JOSEPH E. HAIR, APPELLEE, v. CHICAGO, BURLINGTON &
QUINCY RAILWAY COMPANY, APPELLANT.

FILED MAY 7, 1909. No. 15,675.

1. **Railroads:** LICENSEE: DUTY OF LICENSOR. A railway company that
maintains its station in a public highway in the center of its
switchyards, and for years has permitted the public to use said
yards as a footway, is bound to exercise reasonable care to avoid
injuries to persons who are known or reasonably may be ex-
pected to be within those yards in the vicinity of said station.

2. **Negligence:** QUESTION FOR JURY. Questions of negligence and con-
tributory negligence, where the facts are such that from them
different minds may reasonably draw diverse conclusions, are
for the jury, and not the court, to determine.

3. **Appeal:** INSTRUCTIONS. If the trial court fairly instructs the jury
concerning the law of a case, its judgment will not be reversed
because of some slight ambiguity in the instructions, nor because
they might lawfully have been stated more favorably to defend-
ant.

APPEAL from the district court for Lancaster county:
LINCOLN FROST, JUDGE. *Affirmed.*

*James E. Kelby, Arthur R. Wells* and *Frank E. Bishop,*
for appellant.

*Wilmer B. Comstock* and *John R. Berry, contra.*

ROOT, J.

Plaintiff recovered judgment for personal injuries, and
defendant appeals.

There is but little conflict in the evidence. It may
fairly be said that three lines of defendant's railway con-
verge at Ashland, a city of about 1,500 inhabitants, where
defendant maintains a switchyard about 400 feet wide
and 1,500 feet in length. The greater part of Ashland
lies west of and some distance from said switchyard.
Main street is 100 feet in width, and crosses said yards
obliquely at a point about midway between the ends

thereof, and defendant's station, with the exception of the northwest corner of the building, is located in said street east of the main track and most of the side tracks, which run north and south. About a half mile north of the station the railway crosses Salt creek, and a half mile further the Platte river. None of the streets north of Main street are opened or traveled across defendant's railway, and people having occasion to cross the railway in said city, if they travel the highway, must come to Main street, and practically all of the individuals transacting business with defendant at Ashland are compelled to pass over the main track and side tracks to reach its agent or station. It also appears that for many years next preceding the date plaintiff was injured the public generally, with at least the tacit consent of defendant, has used the yard aforesaid as a footway in traveling north from said station to Salt creek and the Platte river.

1. Plaintiff in January, 1907, had been working in the neighborhood of Ashland, and on the first of February, in company with a friend, about 4 o'clock in the afternoon, went to defendant's station, and there ascertained that the north and east-bound train would arrive about 7 o'clock. Plaintiff left his suit case with defendant's agent, went back up town for supper, and returned with said friend a few minutes too late for the Omaha passenger. He then inquired of said agent concerning the west-bound passenger train, and was told that it was due about midnight. Plaintiff testified that he had intended to travel on said train to Lincoln, where his parents resided, and that he remained in the waiting room of defendant's station for that purpose, but it does not appear that he informed any employee of the company of his intentions, nor did he purchase or have a ticket or any other evidence of a right to transportation over defendant's railway. About 9:30 o'clock a trainman came into the station, and in speaking to another person stated that a freight train would soon depart for Omaha. Plaintiff's friend went out of the station and north into the yards

to ascertain if he could secure transportation on said freight, and plaintiff stepped outside of the station to bid his friend farewell and breathe the more invigorating air. The night was dark and cold, and snow was falling. While plaintiff was standing west of the station and upon its platform, his hat was blown from his head and northward through the yard. He looked each way and listened, and, not receiving warning of the approach of any car or locomotive, ran from 60 to 100 feet after his hat, and recovered it. The evidence does not inform us with much certainty whether plaintiff went outside of Main street or not, but the inference is that he did. In the meantime one of defendant's locomotives was backing a string of freight cars, at the rate of 10 miles an hour, south from the north part of the yard. The car nearest to plaintiff was a flat car. No warning by way of sound, light or person was given of the approach of the cars. As soon as plaintiff became aware of the movement of the cars, he attempted to get out of their way, but his foot was caught and crushed by the wheels of said flat car. The evidence shows without dispute that it was the custom of defendant when backing cars through said yard to station a brakeman upon the right-hand side of the rear car and to maintain a light thereon. Section 104, ch. 16, Comp. St. 1907, charged defendant with the duty of giving warning, by sounding the locomotive whistle or ringing the bell thereof, of the near approach of said cars to said street crossing.

Defendant insists that plaintiff was a trespasser, to whom it owed no further duty than not to wantonly injure him, and that he is in no more favorable light than was the plaintiff in *Shults v. Chicago, B. & Q. R. Co.,* 83 Neb. 272. Plaintiff relies upon *Chicago, B. & Q. R. Co. v. Wymore,* 40 Neb. 645, and also insists that he was injured in a public highway. Plaintiff also argues that the relation of passenger and carrier existed between the parties hereto at the time of the accident, but we are not willing to concede that fact. Plaintiff, however, was in

the station upon the implied invitation of defendant, and in departing therefrom, whether for temporary purposes or otherwise, would not go in the guise of a trespasser. Defendant's servants were reckless and grossly negligent. At 9 o'clock in the evening, although there would not be much travel across the yards by way of Main street, yet pedestrians and teams were likely to cross at any moment. Individuals desiring to send, or expecting to receive, telegrams might cross the yards to the station, and an occasional footman might be expected to walk north or northwest from the depot through the yards. This brings the instant case within the rule announced in *Chicago, B. & Q. R. Co. v. Wymore, supra,* and distinguishes it from *Shults v. Chicago, B. & Q. R. Co.,* aforesaid. In the first case and the instant one defendant was reasonably bound to anticipate that some one might be in the location where plaintiff was injured, and was charged with the duty of exercising at least ordinary care to give notice of the movement of the cars it was so swiftly propelling toward and across the public highway and across the traveled way to and from its station. *Sullivan v. New York, N. H. & H. R. Co.,* 73 Conn. 203; *Downing v. Morgan's L. & T. R. & S. Co.,* 104 La. 508; *Chesapeake & O. R. Co. v. Keelin's Adm'r,* 62 S. W. (Ky.) 261; *Johnson v. Lake Superior T. & T. Co.,* 86 Wis. 64. The jurors were instructed that plaintiff could not recover if guilty of negligence which contributed to his injuries, and that he was charged with the duty of a reasonable use of his senses to determine whether trains or cars were approaching. Reasonable men, we are satisfied, might draw differing conclusions from the testimony, and we do not feel that we should hold, as matter of law, as defendant argues we should, that plaintiff was guilty of contributory negligence. *Johnson v. Lake Superior T. & T. Co.,* 86 Wis. 64.

2. It is suggested that the tenth instruction given by the court permitted the jurors to return a verdict upon finding that defendant failed to maintain a fence be-

29

tween its station and the railway tracks, but we do not so understand the charge of the court. Plaintiff in his petition, as matter of inducement, alleged that such a fence was not maintained, but did not charge that defendant was negligent in that omission. The acts of negligence are later specifically stated in a separate paragraph of the petition, and the opening statement in the instruction, "In the event that you find from the evidence and under these instructions that defendant was negligent in some of the respects alleged as set out in the first paragraph of these instructions," etc., by reference to said paragraph, which is a summary of the petition, plainly restricts the grounds for recovery to the various specific alleged acts of negligence, and not to any part of the matter of inducement.

3. It would extend this opinion to an unprofitable length to refer to each instruction given and refused. We have examined all of them, and find that the charge of the court is a reasonable statement of the law of this case. The rulings of the court in admitting and rejecting evidence do not present any serious question for our consideration. The defendant did not produce as witnesses any of the train crew responsible for plaintiff's injury, nor any witness other than Mr. Bignell, its division superintendent. The facts testified to by plaintiff's witness are practically undisputed.

Defendant has had a fair trial, and the judgment of the district court is

AFFIRMED.