126        Appellate Courts of Illinois.

Scovern et al. v. Chicago, M. & St. P. Ry. Co., 189 Ill. App. 126.

## James G. Scovern and Frank E. Baldwin, copartners, trading as Scovern and Baldwin, Plaintiffs in Error, v. Chicago, Milwaukee and St. Paul Railway Company, Defendant in Error.

### Gen. No. 19,562.

1. Carriers, § 83*—*place of delivery.* Where the bill of lading issued by a railroad company designates the destination of the consignment as a certain side track in a city, delivery must be made at the side track so specified.

2. Carriers, § 71*—*place of delivery for purpose of inspection.* Where the bill of lading issued by a railroad company designates the destination of the consignment as a certain side track in a city, the lawful holder of such bill of lading has the right to inspect the consignment at such side track and cannot be required to make the inspection upon another side track, which, by the rules of the railroad known to such holder, has been set aside for inspection, ordering and diverting purposes, the siding designated in such bill of lading being, under the company's rules, reserved solely for cars intended to be immediately unloaded.

3. Carriers, § 80*—*right of carrier to change place of delivery.* A clause in a bill of lading providing for carriage "to its usual place of delivery at said destination" does not give the carrier the right by its rules to change the place of destination specifically named by setting apart tracks at a different point at which the holder of the bill of lading might inspect the consignment, and upon the presentment of the bill of lading have the car diverted to its proper destination, and this is true although the holder of the bill of lading had knowledge of the carrier's custom in that respect.

4. Carriers, § 80*—*when evidence of general custom inadmissible to construe bill of lading as to place of delivery.* Where a bill of lading specifically designated the destination as a particular siding in a certain city, the fact that it also contained a provision for carriage "to its usual place of delivery at said destination" and that, under the rules and general custom of the company, cars were delivered at a certain "holding and inspection track" about two miles from the siding designated, and diverted to such siding only for the purpose of immediate unloading, and on the production of the bill of lading does not create an ambiguity permitting evidence of such general custom, and thereby establishing a destination other than that named in the bill of lading.

5. Carriers, § 83*—*when presentation of bill of lading unnecessary to require delivery at place provided in bill of lading.* Where

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

the bill of lading issued by a railroad company designates the destination of the consignment as a certain side track in a city, the lawful holder of such bill of lading may require delivery to be made at such side track without being required to present the bill of lading as a condition precedent to having the car placed upon such siding.

Error to the Municipal Court of Chicago; the Hon. HENRY C. BEITLER, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1913.. Reversed and remanded. Opinion filed October 8, 1914.

HARRY S. DITCHBURNE, for plaintiffs in error.

C. S. JEFFERSON and J. N. DAVIS, for defendant in error; H. H. FIELD, of counsel.

MR. JUSTICE SCANLAN delivered the opinion of the court.

James G. Scovern and Frank E. Baldwin, copartners, operating and doing business under the firm name of Scovern and Baldwin, plaintiffs in error (hereinafter referred to as plaintiffs), brought three actions of the fourth class in the Municipal Court of Chicago against the Chicago, Milwaukee and St. Paul Railway Company, defendant in error (hereinafter referred to as the defendant), to recover from the defendant the value of three carloads of cabbage shipped over the defendant's line of railroad from Cambria, Wisconsin, to "Morgan street team tracks, Chicago, Illinois." As the issues in the three actions were the same, the cases were, by agreement, consolidated and tried as one suit. The court made a finding in favor of the defendant and entered judgment thereon, and the plaintiffs have sued out this writ of error.

The three cars of cabbage in question were shipped by T. H. Cochrane & Co. in the latter part of October, 1912, from Cambria, Wisconsin, and were consigned to the order of T. H. Cochrane & Co. The destination named in the three bills of lading was "Morgan street team tracks, Chicago, Illinois." The de-

fendant transported the cars to Chicago, Illinois, and placed them on a "holding and inspection track" on its line at Western avenue in said city. This track is about two and one-half miles from "Morgan street team tracks," which is also on defendant's lines, and in said city. The plaintiffs purchased the cabbage from T. H. Cochrane & Co., and they received from them the said bills of lading duly indorsed. About November 1, 1912, Mr. Scovern, one of the plaintiffs, telephoned to Mr. Jones, the reconsigning clerk of the defendant, stationed at the Western avenue "holding and inspection tracks," that his firm had purchased the three carloads of cabbage in question and that it held the bills of lading for the same; that he understood that the cars were then standing on the tracks at Western avenue, or were to be placed there by the defendant; that he wished the railroad company to place the cars on the Morgan street team tracks, the place they were billed to, at once. The clerk replied that the names of the plaintiffs did not appear on the railroad billing as consignor or consignee of the cabbage, and that the railroad company would not place the cars on the Morgan street team tracks until the plaintiffs brought over to his office the bills of lading. Mr. Scovern refused to bring over to the said office the bills of lading, and insisted that the cars must be delivered to the destination named in the bills of lading. The plaintiffs also made several verbal requests to the same effect, and on each occasion received practically the same answer from the railroad company. About November 2nd, the plaintiffs sent a letter to the agent of the railroad company refusing to accept the cars at Western avenue, and asking that they be placed on the Morgan street team tracks. On the trial of the case, over the objection of the plaintiff, the defendant was allowed to prove that the Morgan street team tracks were situated in the heart of a busy wholesale district on the west side of the city of Chicago; that it had limited trackage facilities, and was capable of

holding only one hundred or one hundred and ten cars; that the railroad company used it for the placement of cars, the contents of which were to be unloaded as quickly as possible; that the defendant had provided holding tracks at Western avenue in the city of Chicago, where cars might be inspected, and either reconsigned or diverted to other places, or ordered down to the Morgan street team tracks for immediate unloading; that the plaintiff and other dealers in cabbage in Chicago were familiar with the character of the track and the use to which the defendant put it; that the railroad company, for the purpose of preserving the character of the Morgan street team tracks, and to prevent them from becoming holding tracks, made the following rules:

"Chicago, Milwaukee & St. Paul Railway,
Local Freight Office.
Chicago, Nov. 2nd, 1911.

. . . . . . . . . . . . . . . . . .
Chicago, Illinois.
Gentlemen:

On and after Thursday, November 9, 1911, all carloads of potatoes and cabbage will be held on Track #7, Yard #1, Western Avenue Yard, corner Grand and California Avenues, for inspection, ordering and diverting.

No cars of potatoes or cabbage will be brought to Yard #2 (Morgan Street Team Track), except for unloading purposes.

It will, therefore, be necessary for you to arrange in accordance with the above.

Please acknowledge receipt of this letter, and oblige,

Yours truly,

. . . . . . . . . . . . . . . . . . . . .
Agent."

"Chicago, Milwaukee & St. Paul Railway,
Sept. 23rd, 1912.

To All Concerned:—

Commencing and including Wednesday, September 25th, 1912, all carloads of potatoes and cabbage will be held at Track #1, Yard #1, West-

ern Avenue Station, for Inspection, Ordering and Diverting.

N. W. PIERCE,<br>Agent.''

The defendant was further allowed to prove, over the objection of the plaintiff's, that the plaintiffs, and others engaged in the sale of cabbage in the city of Chicago, were familiar with the said rules.

After the cars had remained at the Western avenue "holding and inspection tracks" for some time, notice, as provided by the statutes of Illinois relating to the sale of unclaimed perishable property, was given to the plaintiffs by the defendant, and shortly thereafter the contents of the cars were sold at public auction by the defendant. The cabbage was then in a damaged condition and the sale netted but a few dollars.

The plaintiff contends: (1) That the bills of lading expressly designate Morgan street team tracks as the destination of the cars, and that the defendant did not complete its contract of carriage by delivering the cars at the Western avenue "holding and inspection tracks"; that the railroad company, under the terms of its contract, had no right to make that place the place of delivery of the cars; and that it was error for the trial court to allow the defendant to make proof of the rules and customs of the company, heretofore referred to, for the reason that the said rules and customs could not override the express agreement of the parties; (2) that the defendant had no right to demand, as a condition precedent to the placement of the cars on the Morgan street team tracks, that the plaintiffs produce their bills of lading at the Western avenue "holding and inspection tracks," and that the plaintiffs were not obliged to present the bills to the railroad company until it had completed its contract and transported the cars to the destination named in the bills of lading.

The defendant contends: (1) That while the destination named in the bills of lading is Morgan street team tracks, Chicago, Illinois, each of the said bills also

contains the provision that the railway company is to carry the car *"to its usual place of delivery at said destination,"* and that the usual place of delivery for cars billed to Morgan street team tracks, Chicago, Illinois, as shown by the evidence in the case, is the Western avenue "holding and inspection tracks"; that the defendant, for the purpose of explaining the terms of the contract, had the right to show, by parol evidence, that the "usual place of delivery at said destination" is the Western avenue "holding and inspection tracks."    (2) The railway company never refused at any time to place the cars on the Morgan street team tracks for the lawful holder of the bills of lading; it was ready and willing at all times to make the placement on the said tracks as soon as the lawful holder of the bills of lading presented the same to the reconsigning clerk at the Western avenue "holding and inspection tracks"; that the said requirement was a reasonable one and the defendant had the right to make it a condition precedent to the placement of the cars on the Morgan street team tracks.

In support of its claim that the Western avenue "holding and inspection tracks" is the usual place of delivery intended by the contract of the parties in this case, the defendant relies on the provision in each bill of lading that the railway company is to carry the car *"to its usual place of delivery at said destination."* It contends that by rules and custom, well known to all shippers, this place is the delivery place for all cars of cabbage consigned to Morgan street team tracks, and that it is the place of delivery contracted for by the parties to the bills of lading in question, as evidenced by the said provision just quoted. The said provision is plain and unambiguous. It does not change the destination specifically named in such bill. It was intended to protect the railway company from being required to deliver the cars at a place *at the destination* other than its usual place of delivery. The defendant carried the cars to the Western avenue

"holding and inspection tracks," located about two and one-half miles from the destination named in the bills of lading. It is clear that the contention of the defendant, that the Western avenue "holding and inspection tracks" is the delivery place intended in the bills of lading, cannot be sustained. The cars had not reached their destination at that place, and the railway company, to complete its contract of carriage (as it admits in its brief), was obliged to transport the cars to the destination named in the bills—the Morgan street team tracks. As the cars, when they reached the Western avenue "holding and inspection tracks," had not reached their destination, the railway company, over the objection of the plaintiffs, had no right to make that place the place of delivery, and the plaintiffs had the right to insist that the cars be carried to the usual place of delivery at the Morgan street team tracks. The contracts between the parties clearly specify that the place of delivery shall be at the destination named in the bills of lading, and it was error for the trial court to admit the evidence offered by the defendant, tending to prove that the Western avenue "holding and inspection tracks" (tracks not located at the specified destination) were, by rule and custom, the delivery place for the Morgan street team tracks. The law regarding the showing of a custom or usage, for the purpose of showing the intention of the parties to a contract, is very clearly stated in the case of *Dixon v. Dunham,* 14 Ill. 324, 326. In that case the court said: "No usage or custom can be admitted to vary or control the express terms of a contract, but they may be admitted to determine that, which by the contract is left undetermined. The parties, by their contract, may abrogate any custom, no matter how ancient or uniform, but such custom cannot abrogate the terms of a contract. Whenever there is a conflict, the contract must control."

The defendant had no right to demand, as a condition precedent to the placement of the cars on the Morgan street team tracks, that the plaintiffs present

their bills of lading to the reconsigning clerk at the Western avenue "holding and inspection tracks," as the contract of carriage, at the time of the demand, had not been completed. When the plaintiffs sought the possession of the goods at the proper place of delivery, the defendant would then, of course, have a right to demand that the plaintiffs present the bills of lading for the cars before the company parted with the possession of the contents of the same. The defendant strenuously argues that the necessities of trade compelled the defendant to use the Morgan street team tracks only as a place for immediate delivery; that the capacity of the same is limited, and that it would be a great hardship to the defendant and to the shippers of perishable goods, like cabbage, if the company is not allowed to preserve the character of the place by reasonable rules. Such an argument cannot avail against the plain language of the contract in this case. If the company desires to give a certain character to the destination in question in this case, it is well able to do so through the medium of its bills of lading.

It follows from what we have said that the defendant did not complete its contract of carriage by delivering the cars at Western avenue "holding and inspection tracks," and the refusal of the plaintiffs to produce their bills of lading at that place did not affect the liability of the defendant for its failure to complete its contract. For the reasons heretofore given by us in this opinion, we hold that the trial court erred in finding the issues for the defendant. The judgment of the Municipal Court of Chicago will be reversed and the cause remanded.

*Reversed and remanded.*