LOUISE MITCHELL, ADMINISTRATRIX, ET AL., APPELLEES V.
MISSOURI PACIFIC RAILROAD CORPORATION, APPELLANT.

FILED NOVEMBER 18, 1925.   NO. 23268.

1. Carriers: SHIPMENTS: RIGHT OF INSPECTION.   The consignee
has the right to examine goods before accepting delivery; and
this doctrine applies to interstate as well as intrastate ship-
ments, there being nothing in the Carmack amendment which
restricts this right, and it also applies to car-load lots.   And
while engaged in the reasonable exercise of this right of in-
spection upon the premises of the carrier, the consignee may
not be considered as a trespasser or bare licensee, but is an
invitee in the technical sense of that term.

2. ———: ———: ———.   The duty of the carrier as to mak-
ing delivery and providing opportunity for reasonable inspection
prior thereto may be determined by the established custom and
well-known usage which will be binding upon the shipper and the
consignee; thus the place and time of inspection may be de-
termined by the custom or usage.

3. Negligence: COMPARATIVE NEGLIGENCE: DAMAGES.   "If, on the
trial of an action 'brought to recover damages for injuries to a
person or to his property caused by the negligence of another,'
plaintiff is found to be guilty of negligence directly contributing
to the injury complained of, he cannot recover, even though
defendant was negligent, unless the contributory negligence of
plaintiff was slight and the negligence of defendant was gross
in comparison therewith; and if, in comparing the negligence of
the parties, the contributory negligence of the plaintiff is found
to exceed in any degree that which, under the circumstances,
amounts to slight negligence, or if the negligence of defendant
falls in any degree short of gross negligence under the circum-
stances, the contributory negligence of plaintiff, however slight,
will defeat a recovery.   And even when plaintiff has established
his right to recover under this rule, it is the duty of the jury to
deduct from the amount of damage sustained such amount as
his contributory negligence, if any, bears to the whole amount of
damage sustained.   Rev. St. 1913, sec. 7892."   *Morrison v.
Scotts Bluff County,* 104 Neb. 254.   See, also, *Bauer & Johnson
Co. v. National Roofing Co.,* 107 Neb. 831.

APPEAL from the district court for Lancaster county:
WILLARD E. STEWART, JUDGE.   *Reversed.*

*J. A. C. Kennedy* and *Yale C. Holland,* for appellant.

*Peterson & Devoe, Good & Good* and *Reavis & Beghtol,* *contra.*

Heard before MORRISSEY, C. J., DEAN, DAY, GOOD, THOMPSON and EBERLY, JJ.

EBERLY, J.

This is an action by Louise Mitchell, administratrix of James H. Mitchell, deceased, and another, plaintiffs, against the Missouri Pacific Railroad Corporation in Nebraska, defendant and appellant here, for damages caused by the death of James H. Mitchell. At the time of his death Mitchell was president of the City Fuel Company, Lincoln, Nebraska, a corporation then dealing in coal, wholesale and retail.

On August 22, 1921, Missouri Pacific car No. 70231 arrived at the railroad yards of the defendant in Lincoln consigned to the City Fuel Company. On the morning of August 23, Gaffney, who was the acting car clerk of the defendant, in accordance with the prevailing custom, called the City Fuel Company by telephone to secure "disposition" of car No. 70231. Eberly, a yard superintendent of the City Fuel Company, pursuant to instructions previously given by Mitchell, answered the telephone call and was advised of the arrival of car No. 70231 and was requested to give disposition of the same, to which Eberly then replied that this could not be done until after the coal had been inspected, and he requested that the car be held by the Missouri Pacific Railroad Corporation for that purpose. In turn, Gaffney conveyed the information to Gardner, the foreman of the switching crew, that there was no disposition of car No. 70231, and that the same was directed to be "held." About an hour after the message concerning car No. 70231 had been received at the office of the City Fuel Company, Mitchell, the deceased, accompanied by Eberly, proceeded to search out the car in question for the purpose of inspection. They commenced at the east end of the Missouri Pacific yards and proceeded westerly in search of

the car in question and finally arrived at a point where the Lincoln mill is located on defendant's right of way. Here the car sought for was discovered as the leading car of a string of six or eight cars which were standing detached from a switch engine and extending from a point near what is known as the "scale house" in a westerly direction on what appears in the record as the "scale track" and the "crossover track" connected therewith. These men passed over this space of some 150 feet that intervened between the south line of defendant's right of way and the car in question and were in the unobstructed view of the employees of the defendant constituting the switching crew. In like manner the switch engine which was then faced to the east and detached from the string of cars in question, and not in motion, was in plain sight of the two men. The evidence discloses that car No. 70231 which was an open coal car loaded with coal, was, because of a curve in the track, and the presence in the string of cars of some box cars, not within the view of the members of the switching crew. On arrival at the car, Mitchell, in the manner usual to making such inspections, mounted the ladder and took a position on the east end of the car, part of the time standing on the coal, and part of the time on a beam which was some eight inches in width across the east end of the car. Eberly followed up the ladder, where he remained. The inspection was completed and Eberly descended from the ladder. Mitchell had returned to his position on the beam and was stooping preparing to follow. As he stooped to grasp the ladder, a car set in motion by the switch engine, without any warning of any kind, and without knowledge of either Eberly or Mitchell, came in contact with the east end of the string of cars, and the force of the impact transmitted through the cars intervening struck the car on which Mitchell was standing with such force as to precipitate him to the ground between the car on which he was standing and the car immediately east of it. This accident resulted in his death.

Evidence was introduced by the plaintiffs tending to

show that for many years a custom or usage, well known and tacitly, if not expressly, approved by the defendant, existed in the Lincoln yards, and that pursuant thereto consignees of cars sought them out and inspected them wherever in the yards they might be found, which obviously would include as a place where cars would be subject to inspection the scene of the death of the deceased. The defendant controverts this claim and insists that, even if the evidence as a whole establishes the fact that inspections were permitted in certain portions of the defendant's railroad yards, the scale track, the scene of the accident, was a lead track and kept open continuously and was never occupied for any length of time except when cars were being weighed, and also insists that the scale track in question as well as the crossover connected therewith were never used for inspection purposes and were not within the custom or usage referred to.

Before the issues were joined on plaintiffs' amended petition, a motion was filed by the defendant to strike certain portions of the same, which was in part sustained and in part denied. The case was finally tried upon plaintiffs' amended petition and the amended answer of the defendant denying negligence and averring contributory negligence and the assumption of risk by plaintiffs, and the reply of plaintiffs. There was a verdict for the plaintiffs, and defendant appeals.

Among the assignments of error most emphasized in defendant's brief are those which relate to the claim of the insufficiency of the evidence to warrant a verdict in favor of the plaintiffs. In this connection it is to be remembered that, the jury having returned a verdict for the plaintiffs, all matters of conflicting evidence must be resolved in their favor, and also where the evidence is susceptible of two constructions, one favorable to the plaintiffs and one against them, the first, and not the second, will prevail in the consideration of these assignments of error. The fundamental contention of the defendant is that Mr. Mitchell at the time of his death was in its yard purely on his own business;

business in which the railroad company was not interested; that if he was not a trespasser he was at least in no better position than a bare licensee. In either case he was a person to whom the railroad company then owed no duty as long as no wanton or wilful injury was inflicted upon him. In view of the facts of the record, the rule adopted in this jurisdiction applicable, appears to be otherwise. *Chicago, B. & Q. R. Co. v. Wymore,* 40 Neb. 645; *Chicago, B. & Q. R. Co. v. Wilgus,* 40 Neb. 660; *Omaha & R. V. R. Co. v. Wright,* 47 Neb. 886; *Stading v. Chicago, St. P., M. & O. R. Co.,* 78 Neb. 566; *Hair v. Chicago, B. & Q. R. Co.,* 84 Neb. 398, In *Shults v. Chicago, B. & Q. R. Co.,* 83 Neb. 272, and also in *Merkouras v. Chicago, B. & Q. R. Co.,* 101 Neb. 717, the doctrine of the case of *Chicago, B. & Q. R. Co. v. Wymore, supra,* is expressly approved, though the case itself is distinguished. Indeed, if Mitchell is to be deemed a trespasser or, at most, a bare licensee, it would seem that the facts of the instant case would call for the application of the doctrine announced in *Krummack v. Missouri P. R. Co.,* 98 Neb. 773, which is as follows:

" 'A railroad company * * * is bound in all cases to exercise reasonable care to avoid injuring all persons who are known to be, *or who may be reasonably expected to be, upon its right of way.'* *Chicago, B. & Q. R. Co. v. Wymore,* 40 Neb. 645. And where the evidence shows that the switching-yards of a railway are close to a large public school building and playground, that young children have long been in the habit of playing on or near the cars and tracks, ordinary care demands that in switching cars due regard should be paid to these conditions, and a failure to enclose the tracks and a neglect on the part of those engaged in switching to observe whether children are on the cars or tracks when a train is being backed in, from the lack of which precautions a traspassing child is injured, may constitute actionable negligence."

For, in view of the custom and usage which the jury's verdict presupposes, the defendant's attention was necessarily challenged to the fact of the continued presence of con-

signees or their agents in the yards engaged in duties of inspection, and was therefore required by law to exercise reasonable care to avoid injuring all parties known to be, or who might reasonably be expected to be, upon its right of way in the yards and for the purpose in question. It could not therefore be said that the defendant in the instant case, under the circumstances hereinbefore recited, performed its full duty when it inflicted no wanton or wilful injury upon the deceased, even though he be considered a trespasser or a bare licensee. But it is thought that the rule of law, defining the rights of trespassers and licensees, is inapplicable under the facts in this case. The defendant at the time was a common carrier engaged in completing the shipment of coal over its lines consigned to the City Fuel Company, of which the deceased was president and managing officer. This car-load of coal had arrived at its destination, Lincoln, Nebraska. It was for delivery. By reason of the relation of carrier to the consignee certain rights were created and certain duties were imposed. These duties were necessary incidents of the shipment and for the performance of which defendant had collected or was to receive the compensation permitted and fixed by the law of the land. One of the rights growing out of this transaction was the right of the consignee to inspect the coal before accepting delivery, and this doctrine applies to interstate as well as intrastate shipments, there being nothing in the Carmack amendment which restricts the right, and also applies to car-load lots. *Burkenroad Goldsmith Co. v. Illinois C. R. Co.*, 138 La. 81; *Scovern v. Chicago, M. & St. P. R. Co.*, 189 Ill. App. 126; *Reed Oil Co. v. Smith*, 154 Ga. 183; *Hines v. Scott*, 112 Tex. 506; 10 C. J. 253, sec. 363.

Necessarily the duty imposed upon the carrier to make due and proper delivery of the shipment and the right vested in the consignee to demand and receive delivery thereof were incidents of this contract of shipment and further imposed upon the carrier the duty to deliver at the destination mentioned in the contract at a place safe and reasonable for the consignee to receive the consignment.

10 C. J. 252, sec. 361.  So, also, the right of inspection
vested in the consignee likewise, of necessity, imposed the
correlative duty upon the carrier of providing at its own
cost and responsibility a place safe and reasonable for the
consignee to inspect.  From these considerations it log-
ically follows that inspection of the consignment as well as
acceptance thereof by the consignee are not purely his own
business in which the carrier has no interest, but rather in-
volved duties for the performance of which the carrier was
paid a compensation and which duties it is bound to perform.

With reference to the character and the rights of a person
or his agent who goes upon the right of way to accept de-
livery and receive a consignment at a place where the same
has been unloaded and placed upon the grounds (within the
carrier's yards) this court has said: "Where a person or
his agent goes upon the railroad right of way for the pur-
pose of obtaining goods consigned to him, which the railroad
company has unloaded and piled upon the ground, such
person is an invitee and not a trespasser, and the company
owes to him the duty of exercising ordinary care not to
injure him." *Wilson v. Union P. R. Co.*, 107 Neb. 111.

In the nature of the case, there appears no reason why
this court should differentiate between the status of the
man who rightfully goes upon the right of way pursuant to
an established custom and usage to inspect a consignment
of goods held there by the carrier, prior to delivery, and the
man who rightfully goes upon the same right of way to
remove the same consignment.  In neither case is the right
exercised gratuitous or conferred as the result of permis-
sion, or favor, extended by the carrier.  In both it is ex-
ercise of rights which are created and arise under contract,
and because of the relation of carrier and consignee.  Both
inspection and receipt of consignment are therefore busi-
ness in which the carrier has an interest, and neither is
purely the business of the consignee.  It would follow
therefore that both the man who inspects as well as the
man who accepts and receives the delivery are invitees in
the technical sense of the term, and engaged in business

with the company or its agents when performing such acts, and the company owes them alike the duty of ordinary care. It follows that we must proceed to the consideration of the further assignments of error on the basis that the deceased was an invitee at the scene of his death pursuant to custom and usage established with at least the tacit consent and implied approval of the defendant, and which was observed by all parties, and as such invitee was a person "who might be reasonably expected on its right of way" at the time and place of the accident, and for the safety of whom the defendant was bound to exercise ordinary care. In other words, having in view the physical condition of defendant's yards; the lack of warnings; the existence of the custom and usage which necessarily caused the lawful presence within the yards on or about the tracks and upon and in the cars of those engaged in transacting the business of inspection as contemplated thereby; the nature, methods, and dangers connected with the business carried on in its yards, aforesaid, by the defendant, including those inherent in the instrumentalities by it made use of; all create a situation which requires the due application of the rule— "That, whenever one person is by circumstances placed in such a position with regard to another that every one of ordinary sense who did think would at once recognize that if he did not use ordinary care and skill in his own conduct with regard to those circumstances he would cause danger of injury to the person or property of the other, a duty arises to use ordinary care and skill to avoid such danger." *Heaven v. Pender*, 11 Q. B. Div. (Eng.) 503.

But it is said that deceased, under the facts disclosed by the evidence, was guilty of such contributory negligence as will bar recovery. In consideration of this proposition it is to be remembered that the rule applicable to the situation is: "Shippers and consignees of freight on railroad premises for the purpose of loading and unloading cars are properly there and are not trespassers, or bare licensees, and the railroad company is bound to use reasonable care to avoid injuring them while so engaged. If such persons while so

engaged, and without negligence on their own part, other than that inattention to their own safety which an absorption in the duties in which they are engaged naturally produces, are hurt by the negligence of the railway company, they have an action for damages. It is a duty of switch crews with knowledge, or the means of knowledge, that persons are loading or unloading cars, to warn them of an intention to switch cars over a track on which their car is placed. These persons do not assume the risk of injuries from this cause. The persons actually at work must be notified; it is not sufficient to notify their employers." 3 Elliott, Railroads (2d ed.) sec. 1265c. See, also, *Missouri, O. & G. R. Co. v. Collins,* 47 Okla. 761; 33 Cyc. 811.

In view of the custom and usage prevailing in the yards, it would seem that consignees lawfully engaged in inspections of consignments are strictly within the protection of the above rule. Under the custom and usage prevailing it would seem that a jury would be justified in finding that the defendant should have expected the presence of inspectors and should have taken reasonable care to ascertain the facts with reference thereto. For, if they knew or had reason to suspect Mitchell's presense on the car in question, it was the duty of the company to notify him that the car was about to be moved before it was moved, and the failure so to do resulting in injury was negligence of the defendant.

In the case of *Johnson v. Waverly Brick & Coal Co.,* 276 Mo. 42, it was insisted by counsel for the railroad company that the plaintiff was guilty of such contributory negligence as to prevent a recovery, as a matter of law, by standing with his back to the approaching train so that he could not see it; the train referred to being an engine with cars attached which were then in the process of switching. The rule laid down is that an employee of a coal company engaged in trimming cars on a siding and working in a dangerous place has a right to assume that the railroad company will not move the cars without warning. *Alabama G. S. R. Co. v. Foley,* 195 Ala. 391; *Degitz v. Missouri, K. & T. R. Co.,* 97 Kan. 654; *Weaver v. St. Louis & S. F. R.*

*Co.*, 170 Mo. App. 284; *Missouri, O. & G. R. Co. v. Collins*, 47 Okla. 761.

"Where a car was placed for loading by an employee of the railroad company, the shipper loading the car could assume that the employee would not negligently injure him by striking the car with an engine operated by the employee within the scope of his employment, and the shipper, working in the car without taking any precautions against injury by the car being struck by the engine, was not guilty of contributory negligence." *Fellhauer v. Quincy, O. & K. C. R. Co.*, 177 S. W. 795 (191 Mo. App. 137).

It would seem therefore that it was incumbent upon the switching crew to use a reasonable care to determine the presence of inspectors on the coal cars that made up the string of cars in their possession for the purpose of warning them of impending movements of such cars, and that persons lawfully engaged in said car had the right to rely upon such warning being given, under the circumstances existing in the present case. At all events the facts involved in this case are proper to submit for the consideration of the jury on the issue of contributory negligence as was done by the trial court in this case.

This brings us to the consideration of the objections to the instructions given and refused by the court on the subject of contributory negligence. The rule upon this subject as applicable to the facts in this case was announced in *Morrison v. Scotts Bluff County*, 104 Neb. 254, and is as follows: "If, on the trial of an action 'brought to recover damages for injuries to a person or to his property caused by the negligence of another,' plaintiff is found to be guilty of negligence directly contributing to the injury complained of, he cannot recover, even though defendant was negligent, unless the contributory negligence of plaintiff was slight and the negligence of defendant was gross in comparison therewith; and if, in comparing the negligence of the parties, the contributory negligence of the plaintiff is found to exceed in any degree that which, under the circumstances, amounts to slight negligence, or if the negligence of de-

fendant falls in any degree short of gross negligence under the circumstances, the contributory negligence of plaintiff, however slight, will defeat a recovery. And even when plaintiff has established his right to recover under this rule, it is the duty of the jury to deduct from the amount of damage sustained such amount as his contributory negligence, if any, bears to the whole amount of damage sustained. Rev. St. 1913, sec. 7892." See, also, *Bauer & Johnson Co. v. National Roofing Co.,* 107 Neb. 831. The trial court attempted to cover this subject in the giving of instructions Nos. 4, 6, 8, 11. In these instructions however the element referred to in the following language: "Or if the negligence of defendant falls in any degree short of gross negligence under the circumstances, the contributory negligence of plaintiff, however slight, will defeat a recovery" is wholly omitted. In instruction No. 10 requested by defendant in the court below and refused this element was substantially covered. The failure of the court to embody in his instructions the element above quoted thus constitutes error. In view of the fact that the controlling issues in this case are certainly the matter of negligence and contributory negligence, the error is deemed prejudicial and necessitates the reversal of the case. A retrial of this case being necessary in the court below, and that court now having before it the decision of this tribunal in the case of *Lawson v. Union P. R. Co.,* 113 Neb. 745, further discussion of the errors assigned by the defendant would serve no good purpose. For this error in the instruction of the trial court, the judgment of the district court is reversed and the case remanded for a new trial.

REVERSED.