OMAHA & REPUBLICAN VALLEY RAILWAY COMPANY V. GEORGE M. WRIGHT ET AL.

FILED APRIL 7, 1896.    No. 6480.

1. Negligence: PLEADING. An allegation of negligence in a pleading is like one of fraud,—a mere conclusion. The facts from which the inference of negligence arises must be pleaded.

2. ———: ———: INSTRUCTIONS. It is error to submit to the jury an issue of negligence not raised by a pleading of specific facts.

3. Railroad Companies: DUTY OF ENGINEER: INJURY TO LIVE STOCK: NEGLIGENCE. It is the duty of an engineer in charge of a train to exercise such a lookout as is consistent with his other duties to ascertain the presence of obstructions on the track, and if such a precaution would have revealed the presence of stock in time to have avoided their injury by the use of ordinary care, the railroad company is liable for injuries inflicted upon them, although they were not actually seen until too late to avoid striking them, and although they were not within the protection of the statute requiring tracks to be fenced.

ERROR from the district court of Saunders county. Tried below before WHEELER, J.

The facts are stated by the commissioner.

*J. M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error:

Railroad companies are under no obligations to stop their trains, or to slacken the speed, in order to deliver trespassing animals from peril. It was not the duty of the engineer to keep a lookout for cattle. (*Smith v. Chicago, R. I. & P. R. Co.,* 34 Ia., 509; *Meyer v. Midland P. R. Co.,* 2 Neb., 319; *Kilpatrick v. Richardson,* 37 Neb., 731; *Union P. R. Co.*

*v. Mertes*, 35 Neb., 204; *Illinois C. R. Co. v. Noble*, 32 N. E. Rep. [Ill.], 684; *Philadelphia & R. R. Co. v. Hummell*, 44 Pa. St., 375; *Toledo, W. & W. R. Co. v. Barlow*, 71 Ill., 640; *Illinois C. R. Co. v. Godfrey*, 71 Ill., 500; *Kansas City, L. & S. K. R. Co. v. Bolson*, 14 Pac. Rep. [Kan.], 5.)

*R. S. Norval, contra:*

It is the duty of an engineer to keep a proper lookout for cattle on the track, and the company is liable for damages where stock is killed through a failure to perform that duty. (*Toledo, P. & W. R. Co. v. Bray*, 57 Ill., 514; *Chicago & A. R. Co. v. Kellam*, 92 Ill., 245; *Baker v. Chicago, B. & Q. R. Co.*, 73 Ia., 389; *Missouri P. R. Co. v. Vandeventer*, 28 Neb., 117; *Chicago, B. & Q. R. Co. v. Grablin*, 38 Neb., 101; *Virginia M. R. Co. v. White*, 34 Am. & Eng. R. Cases [Va.], 22; *Guenther v. St. Louis, I. M. & S. R. Co.*, 34 Am. & Eng. R. Cases [Mo.], 47; *Reilly v. Hannibal & S. J. R. Co.*, 34 Am. & Eng. R. Cases [Mo.], 81.)

IRVINE, C.

The defendants in error brought this action against the railway company to recover damages on account of cattle belonging to them, killed and injured by a train of the railway company. The petition, while it is in one count, really alleges, or attempts to allege, three grounds of recovery: First, that a gate on one of the fences along the right of way was insufficient and negligently permitted to be out of repair, and that by reason of those facts the cattle got upon the right of way; second, that after they got upon the right of way, their injury resulted from the careless operation of the train; third, that the railway company,

after the stock was injured, took possession of the dead bodies and the injured cattle and refused to permit the owner to retake them,—that is, a charge of conversion. The answer of the railway company was a series of denials, some of them negatives pregnant, but the whole effect practically that of a general denial, coupled with some affirmative allegations in regard to the security of the gate and negligence on the part of the plaintiff. From a verdict and judgment in favor of the plaintiff for $569 the defendant prosecutes error.

Many assignments of error relate to rulings on the admission of evidence and to the refusal of instructions with regard to the character of the gate and the duty and liability of the railway company concerning the gate and flowing from its condition. The railway company is not, however, in any position to complain of these rulings. The statutes on the subject are found in Compiled Statutes, chapter 72, article 1, sections 1 and 2. The court, after stating the issues, stated to the jury the substance of the statute, and then charged the jury that the duty was imposed by statute of erecting and maintaining gates, opens, or bars at private crossings, only with regard to adjoining proprietors, and that if the cattle were upon the premises of an adjoining proprietor, without his consent, and escaped therefrom upon the right of way without negligence of the defendant, and were killed without its negligence, there could be no recovery. The evidence was uncontradicted that the cattle of the plaintiffs, about 340 in number, were in a corral north of the railway and west of the land of one Wallen; that they escaped from the corral upon the land of Wallen,

and thence came through the gate in question upon the right of way. There was no evidence of any act of the railway company leading to their escape. Therefore the effect of this instruction was to absolutely prevent a recovery on the ground of a violation of the fencing law. Whether or not the court correctly interpreted the statute, we need not and cannot here consider, because the construction given it was so favorable to the railway company that under the evidence all question of liability thereunder was eliminated from the case; nor need we extensively consider any questions raised by the pleadings and proof as to the defendant's taking possession of the dead and injured cattle and converting them to its own use. On the trial of the case this issue was evidently a minor consideration. We think there was error on another feature of the case, and the evidence not being of such a character that on this issue it was the only one which could properly be rendered, if not in direction, at least in amount, we pass over such assignments as relate exclusively to it.

It is quite clear under the instructions of the court that the verdict turned upon the negligence of the railway company in operating its train, whereby the cattle were killed and injured after they came upon the right of way. On this branch of the case the allegations of the petition are that the defendant, "by its agents and employes, while running at a high rate of speed, carelessly and negligently, and without using due caution, ran the engine and train of cars connected therewith and attached thereto over and upon the cattle of these plaintiffs; * * that the said defendant carelessly and negligently, by its employes and ser-

vants in operating said train, ran their said engine
and train in, over, and upon said plaintiffs' stock;
when by exercising proper care and skill in the
management and handling of its said engine and
train, it could have stopped said train long before
striking said plaintiffs' stock." An allegation of
negligence or want of care is like an allegation of
fraud.   It is a bare conclusion.   A pleading is not
sufficient which merely in general terms charges
a want of due care or negligence.   It is necessary
to plead the facts from which an inference of neg-
ligence arises. (*Chicago, B. & Q. R. Co. v. Grablin,*
38 Neb., 90; *Malm v. Thelin,* 47 Neb., 686.) The
petition merely alleges that the defendant negli-
gently ran over the stock, while by the use of
proper care it might have stopped the train before
striking the cattle.   The evidence shows that
there were about 340 cattle on the right of way.
It tends to show that while there was a curve in
the road near the point where the cattle were
struck, there were no cuts, grades, or other ob-
structions which would prevent a clear view of
the track for a distance of half a mile.   The acci-
dent occurred shortly after seven o'clock in the
morning of December 15.   Some of the wit-
nesses testify that it was a clear morning and
quite light at that time.   Others testify that it
was misty and dark.   The court submitted to the
jury the question of the defendant's liability
under instructions that if the engineer saw the
cattle, or by the exercise of due care should have
seen them in time to have stopped the train and
avoid the accident, the company was liable for
his not doing so.   The railway company contends
that the allegations of the petition were in these
respects insufficient, and also that the duty of the

railway company was only to exercise ordinary care to avoid injuring the cattle after those in charge of the train actually saw them. On the first contention, we think the railway company was right; on the second, wrong. The second argument is based on those cases—respectable in number, if in nothing else—which hold that a railway company's duty to a trespasser is merely to avoid wantonly or recklessly injuring him after becoming aware of his presence. This is supported by the argument that the cattle were trespassers and that the rules are the same as to liability for property unlawfully upon the track as for persons. We think the same general principle does apply; but the rule in this state is that it is the duty of the railway company not merely to avoid injuring a trespasser after his presence has been discovered, but that those in charge of trains must exercise reasonable care to avoid injuring all persons who are known or who may be anticipated to be upon the track; and the company is liable if the engineer, by keeping such a lookout as is consistent with his other duties, would have observed the trespasser in time to avoid the injury. (*Chicago, B. & Q. R. Co. v. Grablin, supra; Chicago, B. & Q. R. Co. v. Wymore*, 40 Neb., 645; *Chicago, B. & Q. R. Co. v. Wilgus*, 40 Neb., 660.) Therefore we think that there was no error in the statement that if the engineer in the exercise of ordinary care would have seen the cattle in time to have prevented the injury, it was his duty to do so, and the company was liable for a failure in that regard; but applying the rule already stated in regard to pleading, it is not alleged that the cattle were seen, or that by the exercise of such reasonable care as was consistent with the duties

of the engineer, they might have been seen. While from the evidence we think it is a fair inference that an immediate stop of the train would have been dictated by ordinary prudence on discovering 340 head of cattle on the right of way, the failure to slacken speed is the only fact alleged in connection with the charge of negligence. Whether or not it was the duty of the engineer to stop his train would depend upon other circumstances which are not pleaded. Trains must run, and run at considerable speed, even on misty mornings before daylight, and no inference of negligence can certainly be drawn from the fact that a train was running at a high rate of speed and might have been stopped before trespassing cattle were injured, when there is not a showing of facts raising a reasonable inference that it was the engineer's duty to stop or to exercise some other precaution. If, as plaintiff's evidence tends to show, it was a clear morning, daylight, the track unobstructed for half a mile, and 340 head of cattle on the right of way, and the engineer failed to see these cattle in time to stop, or, having seen them, to stop, if he could, then the inference of negligence would be reasonable; but such facts or similar facts are not pleaded and the proof cannot extend the scope of the pleadings. We think, therefore, while the instructions were correct as abstract statements of law, they submitted to the jury an issue not within the pleadings, and for that reason the judgment must be reversed, with directions to permit plaintiff to amend his petition if he desires.

REVERSED AND REMANDED.