J. C. STADING, APPELLEE, V. CHICAGO, ST. PAUL, MINNE-APOLIS & OMAHA RAILWAY COMPANY, APPELLANT.

FILED MARCH 21, 1907. No. 14,691.

1. **Railroads:** INJURY TO CATTLE: NEGLIGENCE. It is the duty of an engineer in charge of a train to exercise such a lookout as is consistent with his other duties to ascertain the presence of obstructions on the track, and, if such a precaution would have revealed the presence of stock in time to have avoided their injury by the use of ordinary care, the railroad company is liable for injuries inflicted upon them, although they were not actually seen until too late to avoid striking them, and although they were not within the protection of the statute requiring tracks to be fenced. *Omaha & R. V. R. Co. v. Wright*, 47 Neb. 886, followed and approved.

2. **Evidence** examined, and *held* sufficient to sustain the judgment of the trial court.

3. **Instructions** examined, and *held* not prejudicial.

APPEAL from the district court for Dakota county: GUY T. GRAVES, JUDGE. *Affirmed.*

B. T. White, C. C. Wright and B. H. Dunham, for appellant.

J. J. McAllister and C. A. Kingsbury, contra.

OLDHAM, C.

This was an action for damages for the killing of 13 head of cattle on defendant's right of way within the depot grounds and switch limits of the village of Hubbard, Dakota county, Nebraska. There was a trial of the issues to the court and jury, and a verdict and judgment for the plaintiff. To reverse this judgment defendant appeals to this court.

The facts underlying the controversy are that on the morning of July 10, 1903, between the hours of 4 and 5 o'clock, two of defendant's freight trains passed through the village of Hubbard going eastward at a rapid rate of

speed.   The first train was a regular through freight, which, from the evidence, killed four or five head of cattle, none of which, however, were shown to have been plaintiff's cattle.   The special, which followed the regular train in 10 or 20 minutes, ran onto and killed 13 head of plaintiff's cattle at a bridge which crossed a running stream about 500 yards east of the depot within the corporate limits of the village.   The negligence relied upon as a ground for recovery was the careless and reckless operation of the train, and a failure to keep a proper lookout for animals which might have strayed upon the right of way within the switch limits.   The evidence shows that the track extends in a straight line for about one mile west of the point of the injury.   It also shows that from the depot to the bridge the track is ditched on each side for drainage purposes, and that these ditches increased in width and depth as they approached the banks of the stream at the bridge; that wing-fences connected the bridge with the right of way fences which extended west from the bridge, so that when the stock went down the track to the bridge they were prevented from escaping by the bridge, ditches and wing-fences.   There is an allegation in the petition that the train was running at a rate of speed in violation of an ordinance of the village of Hubbard, but this allegation was denied, and, on objection of defendant, the purported ordinance of the village regulating the speed of trains within its corporate limits was excluded from the jury, and the cause was submitted on the allegations of negligence in running the train at a high rate of speed without keeping a proper lookout for trespassing animals at the place of injury.

There was a conflict in the testimony as to the exact time at which the train passed through the village.   Two of plaintiff's witnesses testified that it was about 5 o'clock in the morning; that it was daylight, and that it would have been possible to have seen the cattle from a point a mile west of the bridge.   Defendant's engineer and fireman, on the contrary, testified that the train passed the

station at about 4:25 A. M.; that it was foggy and misty and that, although keeping a careful lookout, they were unable to discover the presence of the cattle on the track until they had passed the depot and were within about 500 feet of the cattle. They also testified that, after discovering the stock on the track, they whistled, turned on the air brakes and took all proper precautions to stop the train; that the cattle ran along the track to the bridge, where they were overtaken and some of them carried across by the engine; and that two freight cars were derailed by the accident.. Plaintiff offered in his behalf the testimony of one Fred Bliss, who claimed that he was a fireman on the train at the time the cattle were killed, and that no effort was made to check the speed of the train when the cattle were discovered. This witness was flatly contradicted by both the engineer and fireman, who testified that he was not on the train at all. Other evidence was introduced tending to show that he had never been employed as a fireman by the defendant company until the month of August following the accident. If plaintiff's right of recovery depended on the uncorroborated statements of this witness, we would agree with the contention of defendant that his testimony was so improbable, so flatly contradicted, and so fully impeached, that, standing alone, it would not support a verdict for the plaintiff. The evidence showed that the cattle escaped from a fenced pasture, in which they had been kept for some time, on the night or morning of the injury, without the knowledge of the plaintiff. There is no dispute as to the fact that the train was on a down grade and running at a high rate of speed when the injury occurred.

The degree of care which should be used to avoid injury to trespassers upon the right of way of a railway company was well defined by this court in the case of *Omaha & R. V. R. Co. v. Wright*, 47 Neb. 886, wherein it was said: "The second argument is based on those cases—respectable in number, if in nothing else—which hold that a railway company's duty to a trespasser is merely to avoid

wantonly or recklessly injuring him after becoming aware of his presence. This is supported by the argument that the cattle were trespassers and that the rules are the same as to liability for property unlawfully upon the track as for persons. We think the same general principle does apply; but the rule in this state is that it is the duty of the railway company not merely to avoid injuring a trespasser after his presence has been discovered, but that those in charge of trains must exercise reasonable care to avoid injuring all persons who are known or who may be anticipated to be upon the track; and the company is liable if the engineer, by keeping such a lookout as is consistent with his other duties, would have observed the trespasser in time to avoid the injury. *Chicago, B. & Q. R. Co. v. Grablin,* 38 Neb. 90; *Chicago, B. & Q. R. Co. v. Wymore,* 40 Neb. 645; *Chicago, B. & Q. R. Co. v. Wilgus,* 40 Neb. 660." Now the unimpeached testimony offered by plaintiff tended to show that it was daylight when the injury took place, and that the track was straight for a mile west from the point of the injury, and that there were 13 head of cattle on the track, and that it would have been possible to have discovered their presence a mile away. In *Omaha & R. V. R. Co. v. Wright, supra,* it was said: "If, as plaintiff's evidence tends to show, it was a clear morning, daylight, the track unobstructed for half a mile, and 340 head of cattle on the right of way, and the engineer failed to see these cattle in time to stop, or, having seen them, to stop, if he could, then the inference of negligence would be reasonable." Under this rule we think the testimony offered by the plaintiff was sufficient to raise a reasonable inference of negligence, which it was proper to submit to the jury as a question of fact.

There is no complaint lodged against the action of the trial court in the admission and rejection of testimony, or in the failure to give any instructions requested by the defendant. There is a general criticism on the first instruction, given by the court on its own motion, that it

was of unnecessary length and copied too much *in extenso* the allegations of both the petition and the answer. While we think that a more abbreviated statement of the issues would have fully sufficed, yet we are unable to find anything in the instruction in any way prejudicial to the defendant. It quoted as freely and fully from the allegations of the answer as it did from those of the petition. The instructions as a whole were rather favorable than otherwise to the defendant's contention. As the sole ground of recovery they required plaintiff to prove by a preponderance of the evidence negligence of the defendant's employees in the management of the train, and in not keeping a proper lookout to discover trespassing stock at the place of the injury. The court took away from the consideration of the jury the surroundings of the track and bridge at the place of the accident, and directed that it only consider the speed of the train in determining whether or not the employees had used diligence in trying to stop the train after discovering the cattle.

Objection is urged against the action of the trial court in giving so much of the sixth paragraph of instructions as told the jury "that it is the duty of the engineer in charge of the engine to keep a vigilant lookout for obstructions upon the track ahead of the engine, and, when he finds the track is obstructed and there is apparent danger either of injury to trespassing animals or to the train in his charge, it becomes his duty to use every effort at his command to avoid injury." The objection to this instruction is that it places a higher duty upon the engineer than is required by law in regard to keeping a lookout for trespassing stock, and using every effort at his command in avoiding an injury when such stock is discovered. It is true, as contended by defendant, that the engineer is only required to keep such a lookout as is consistent with his other duties, and we think, by paragraph 3 of instructions given at defendant's request, the jury were so directed. This instruction is as follows: "The jury are instructed that the undisputed evidence

in this case shows that the cattle of the plaintiff killed in this case were trespassers on the defendant's right of way at the time they were killed, and that the only requirement of the law is that the defendant keep such lookout as is consistent with the other duties of the engineer to discover trespassing stock, and, after discovering that stock is in danger, that the defendant shall exercise reasonable care not to run into them, in other words, that the defendant use reasonable means to stop." While the instruction complained of, if it stood alone, might have suggested an extraordinary degree of care which the law does not require, yet, when read in connection with paragraph 3, as above set out, we think the jury would not have understood from it that the engineer's whole duty was to keep a vigilant lookout for trespassing animals on the track.

Finding no reversible error in the record, we recommend that the judgment of the district court be affirmed.

Ames and Epperson, CC., concur.

By the Court: For the reasons given in the foregoing opinion, the judgment of the district court is

Affirmed.