PREECE v. OREGON SHORT LINE R. CO.

No. 2816.   Decided August 30, 1916.   Rehearing denied November 23, 1916 (161 Pac. 40).

1. LIMITATION OF ACTIONS—"LIABILITY CREATED BY STATUTE"—RAILROAD FENCE LAW—ANIMALS ON RIGHT OF WAY. An action against a railroad for cattle killed on its right of way, where predicated on negligence in operating the train, etc., as well as on defective cattle guards and wing fences, within Comp. Laws 1907, section 456x, requiring railroad companies to maintain cattle guards, and to pay damages for such killing or injuries of domestic animals as results from failure to do so, was not barred by Comp. Laws 1907, section 2877, subd. 1, barring after one year "an action for liability created by statute." (Page 566.)

2. RAILROADS—ANIMALS KILLED ON TRACK—LIABILITY—NEGLIGENT MAINTENANCE OF FENCES. If cattle get on the right of way because of defective condition of cattle guards or connecting fences because of the negligent maintenance thereof by the railroad company and without fault of the owner, the company ordinarily is liable for their being killed or injured. (Page 567.)

3. RAILROADS—INJURIES TO ANIMALS—ACTION—EVIDENCE. In action against railroad for mare killed at a highway crossing by train

going 35 miles an hour, evidence that there was an unobstructed view of the right of way and crossing for a distance of 2,145 feet from the crossing, and that animals at or near the crossing could be seen from an approaching train, *held* to sustain a finding of negligence of the railroad; it not appearing that the owner of the mare was negligent.   (Page 575.)

4.  RAILROADS — INJURIES TO ANIMALS — ACTION — EVIDENCE — PRE-SUMPTIONS.  In such action, it being admitted that the mare was hit while the train was going thirty-five miles an hour, the only inference permissible was that the mare was on, in close proximity to, or was going toward, the track, and was but a short distance from it when the train was in stopping distance of the crossing.   (Page 575.)

5.  RAILROADS—INJURIES TO ANIMALS—ACTION—EVIDENCE.  In such action, the mere fact that a colt was found "crippled in the thigh" in the vicinity of a crossing the morning after its mother was killed there by a train, did not justify the inference that it was struck by the train, where plaintiff's evidence tended to show that soon after the mare was killed the colt was seen running back and forth.   (Page 576.)

6.  RAILROADS—INJURIES TO ANIMALS ON TRACKS—PRIVATE CROSS-INGS—GATES—LIABILITY FOR DEFECTS.  Where a mare got onto the right of way from the owner's field because the gate to a private crossing on his land was imperfectly hung and the fastenings thereof were defective, the owner was not thereby barred from recovery for the resulting killing of the mare by a train, since, although the gate was erected and maintained by the railroad for the use and convenience of the owner, it was nevertheless the railroad company's gate, and the owner was not responsible for such defects.   (Page 576.)

7.  RAILROADS—INJURIES TO ANIMALS—DUTY TO LOOK OUT—PRI-VATE CROSSINGS.  In approaching private or farm crossings, trainmen must keep a lookout to avoid injury to animals which might be lawfully on the crossing, and the company is liable if their failure to do so results in injury to such animals, but they need not slow up or stop the train to ascertain if animals are upon or near the crossing.   (Page 577.)

8.  EVIDENCE—JUDICIAL NOTICE.  The court will take judicial notice of where the sum sets on a given day in the latitude of the forum, and that twilight follows immediately, and continues until the sun is eighteen degrees below the horizon, and that the sun sinks below the horizon at the rate of one degree of longitude for every four minutes of time.   (Page 560.)

FRICK, J., dissenting in part.

Appeal from District Court, Second District; Hon. *N. J. Harris,* Judge.

Action by John Preece against the Oregon Short Line Railroad Company. From a judgment, both parties appeal; the plaintiff also appealing from directed verdict for defendant.

AFFIRMED on defendant's appeal, and on plaintiff's appeal affirmed in part, and in part reversed, and new trial granted.

*Oscar W. Moyle* for plaintiff.

*Geo. H. Smith, Benj. S. Crow, J. V. Lyle,* and *A. B. Robertson* for defendant.

FRICK, J.

The plaintiff brought this action against the defendant to recover the value of certain horses and cattle which the plaintiff alleged were negligently killed on defendant's railroad in Davis County, Utah, at different times and dates.

There were seven causes of action stated in the complaint. In the first cause of action plaintiff sought to recover the value of a mare that was killed and for the injury of her colt which thereafter died. The mare was killed at a public crossing called Burke Lane. The second cause of action was dismissed by the plaintiff at the trial. In the third cause of action plaintiff sought to recover the value of a cow and heifer which were killed on defendant's right of way about 300 feet north of the crossing aforesaid. It seems the cow and heifer went on the right of way over the cattle guards or between the cattle guards and the wing fence leading therefrom to the right of way fence; the right of way being fenced in with a wire fence. The fourth cause of action was for the killing of a cow at the same crossing at which the mare was killed. In the fifth cause of action plaintiff sought to recover the value of a young Percheron mare which was killed on defendant's right of way, she having gone onto the right of way through a private farm gate which was put in and maintained by the defendant on the land of the owner for the

convenience of such owner. With the other two causes of action I am not concerned on this appeal. The mare and colt mentioned in the first cause of action belonged to the plaintiff, while all of the other animals were owned by different persons and were killed at different times and dates, and the several claims were assigned to the plaintiff by the different owners for the purpose of bringing this action.

The plaintiff recovered judgment on the first cause of action for the mare. The court, it seems, did not submit to the jury the question of whether the plaintiff should recover for the colt. The plaintiff also recovered judgment on the third and fourth causes of action. The court directed the jury to return a verdict on the fifth cause of action in favor of the defendant.

The defendant appeals from the judgment in favor of the plaintiff on the first, third, and fourth causes of action, and the plaintiff appeals on the first cause of action in so far as the colt is concerned, and also from the directed verdict and judgment in favor of the defendant on the fifth cause of action.

With regard to the first cause of action the plaintiff alleged the following acts of negligence:

"That the said animals were killed by the carelessness and negligence of defendant in that the defendant failed to use any means to ascertain whether or not said animals were upon the track of said defendant or in a place of danger near its track at said crossing, and failed to use any means to prevent said animals from going upon or remaining upon its track, and in that it carelessly and negligently operated its train at said crossing at a high rate of speed, and failed to stop or lessen the speed of its train as it approached said animals after they were known to be, or in the use of reasonable diligence by defendant's servants in charge of said train should have been known to be, in a place of danger, said animals being visible to the servants of defendant in charge of said approaching train for a long distance, to wit, for about one mile from the place where they were killed."

I remark that while it is alleged that "animals" were killed, the evidence is conclusive that only one was killed by

the train at the time alleged in the first cause of action.

Both parties have filed printed abstracts of the evidence, and each contends that the evidence in such abstracts, in some particulars, is stated too favorably for the party making the abstract. In view of that fact I have carefully read the evidence upon the causes of action in question as the same is certified up by the trial judge in the original bill of exceptions.

The evidence relating to the first cause of action is substantially as follows: The plaintiff, in June, 1908, was the owner of a mare of the alleged value of $200, and a colt about two months old, which, he alleged, was of the value of fifty dollars; that he kept said mare and colt, with other horses, in a fenced pasture belonging to a neighbor; that on or about the 19th day of June, 1908, said mare and colt escaped from the pasture, and on the evening of said day, or perhaps a day or two later, the mare was found dead at a public crossing called Burke Lane. With respect to the time when the mare was killed the plaintiff testified that on the evening in question "the sun goes down—to get right down to cases— I think about three minutes past 8. I don't know whether that is just exactly correct." From observations made, and from other sources of information, the plaintiff also testified that it was about "twenty-four minutes past eight" when the mare was killed, and that on a clear evening like the one on which the mare was killed, he, at half-past eight o'clock, could see "a horse or a dog for a mile." He also testified that no one, except perhaps the engineer and fireman, saw the accident; that the mare was found dead at the crossing after a passenger train had passed south over the crossing; that the crossing in question was in an open country and a little more than a mile north of Farmington station; that the railroad track coursed in a northwesterly direction and was practically without grade, except perhaps a little upgrade north of the crossing; that the track was straight for about three-fourths of a mile south of the crossing and for about one-half mile north of the crossing, from which direction the train in question approached; that a person standing on the track half a mile north of the crossing could see it plainly and could, if

he looked, see animals, if there were any, on or near it; that one could see east and west of the crossing for some distance. The witness also testified to the condition of the crossing, but this is best told by his son, who said that he, immediately after the accident, had made special observations respecting the physical conditions at and surrounding the crossing. The young man said that the track at the crossing was raised above the natural surface of the earth approximately three or four feet (other witnesses testified from two and one-half to three feet, perhaps a little more); that Burke Lane was a public highway of approximately four rods in width, and that the driveway or wagon track was graded so as to raise it level with the railroad grade or track; that the raising of the driveway as aforesaid caused a depression or "hole," as he called it, on either side of the crossing, which, he said, "would be maybe three or four feet from the roadbed to the bottom of the place" or depression. The witness further testified that there were cattle guards on both sides of the crossing; that the cattle guards were connected with wing fences, which led down from the cattle guards about thirty-five feet to the right of way fences, the track being fenced on both sides and on both sides of the crossing; that the wing fences, he said, were made out of "six-inch stuff, I think. * * * I think they were six feet. I didn't measure them, but just judged they [the pickets] were about six feet tall, about six inches wide, and about an inch thick." There was other evidence that the pickets were about five feet high, or perhaps a little higher. He also said, "I don't think they [the engineer] could (have seen the mare) if she had been behind the fence," the picket fence; that is, "if a horse would get down into that hole as I call it (the depression) it would hide itself." The pickets were fastened about four or five or six inches apart, and they were painted white or "whitewashed." Some of the other witnesses testified that the picket fence would not conceal the horse or cattle from the view of those operating a train. The young man said he first saw the mare on the morning after it was killed; that she was lying about sixty feet south of the crossing on the east side of the track, and about fifteen feet from the rails. Another

witness, who lived some distance from the crossing, testified that on the evening of the day the mare was killed he saw the mare and colt about six o'clock, or thereabouts, feeding in the lane; that "after sundown and not yet dark" he was told by two men who looked like "hoboes" or tramps that the mare had been killed at the crossing; that it was just before dark; that after he had finished his supper he went to see the dead mare at the crossing; that at the time the mare was killed, as nearly as he could get at the time, an animal could be seen "possibly between a quarter and a half mile." There was no evidence of any kind or character that the mare had actually gone onto the track, or, if she did, when she did so with respect to the time she was struck. The only evidence that she was on or near the track is that she was struck and killed by a passing train. It was shown, however, that a train like the one in question could have been stopped in a distance of from 1,000 to 1,200 feet; a distance much less than the evidence showed an animal could be seen at the crossing by those operating an approaching train.

Upon substantially the foregoing evidence relating to the accident the defendant moved the court to direct the jury to return a verdict in its favor on the first cause of action. The court denied the motion and submitted the case, in so far as the claim for the mare was concerned, to the jury upon the evidence aforesaid. The defendant excepted to the ruling of the court, and now insists that the court erred in submitting the first cause of action to the jury, for the reason that the evidence is insufficient to authorize a verdict and judgment against the defendant.

The defendant has cited a number of cases wherein it is held that the mere fact that an animal is found dead by the side of a railroad track which is being operated by the defendant in the action is not sufficient to authorize a finding of negligent killing against such defendant. Among other cases the following are cited: *International & G. N. R. Co.* v. *Holley* (Tex. Civ. App.), 160 S. W. 990; *International & G. N. R. Co.* v. *Bandy* (Tex. Civ. App.), 163 S. W. 341; *International & G. N. R. Co.* v. *Leuschner* (Tex. Civ. App.), 166 S. W. 416; *Atchison, T. & S. F. R. Co.* v. *Adcock*, 38 Colo. 369,

88 Pac. 180; *Robinson* v. *D. & R. G. R. R. Co.,* 24 Colo. 98, 49 Pac. 37; *Decker* v. *Chicago, B. & Q. R. Co.,* 187 Mo. App. 207, 172 S. W. 1168. None of the foregoing cases is in point here, for the reason that in this case the plaintiff went farther than merely showing that the mare was found dead by the side of the track. Of course he proved that he found the mare dead, but he also proved that the place where she was struck was in an open country and could be seen for a long distance both ways along the track, and also from all other directions. He also proved just what the physical conditions surrounding the crossing were at the time, and that while the mare was struck after sunset, yet that she was struck before dark. He further showed that the train could have been stopped within a much less distance than the mare could have been seen by the engineer. From these facts and circumstances plaintiff contends the jury were authorized to infer that if the engineer had kept a proper lookout—that is, if he had exercised ordinary care in doing so, as he should have done—he could have seen the mare in time to have avoided the collision; that if he did not look, or if he did and saw the mare and did not check the speed of the train, or stop it if necessary, he, under the circumstances, was guilty of negligence.

The question is not entirely free from difficulty, nor, in view of some of the cases, is it free from doubt. In 33 Cyc. 1297, the rule applicable to public crossings is stated thus:

"Where the ground of recovery relied on is a failure to maintain a proper lookout or to exercise proper care to avoid injury to animals seen on or near the track, there must be some evidence reasonably tending to show such negligence; but a finding of negligence in failing to maintain a proper lookout may be sustained where it is shown that the animal could have been seen for a sufficient distance within which to stop the train."

The following cases are cited in support of the text, namely: *Colorado, etc., R. Co.* v. *Charles,* 36 Colo. 221, 84 Pac. 67, also cited by plaintiff; *Kansas City, Ft. S. & G. R. Co.* v. *Hines,* 32 Kan. 619, 5 Pac. 172; *Louisville & N. R. Co.* v. *Jones* (Ky.), 52 S. W. 938; *Stading* v. *Chicago, etc., R. Co.,* 78 Neb. 566, 111 N. W. 460, also cited by plaintiff; *Toledo, etc., R. Co.*

v. *Ingraham*, 58 Ill. 120; *Railroad* v. *Abernathey*, 106 Tenn. 722, 64 S. W. 3. In addition to the foregoing plaintiff's counsel also cites *San Antonio & A. P. Co.* v. *Yeager* (Tex. Civ. App.), 43 S. W. 25, and *Kelly* v. *Oregon S. L. & U. N. R. Co.*, 4 Idaho 190, 38 Pac. 404. In the first three cases cited above the evidence was that the animals were actually upon the track where they might have been seen in time to have avoided the collision. Indeed, in *Toledo, etc., R. Co.* v. *Ingraham*, the Supreme Court of Illinois, in the course of the opinion, said:

"The evidence offered by the appellee (the owner of the animal) tended to and did prove facts from which the jury might properly infer that the servants of the company recklessly and willfully destroyed the property of the appellee."

The case from Tennessee is apparently partly based upon the fact that the animal was on the track, and partly upon the Tennessee statute. The Yeager Case and the Kelly Case were both based "upon the fact that the evidence showed that the animals were actually upon the track so that they could have and should have been seen by the engineer before they were struck by the train. In the Stading Case from Nebraska the evidence showed that a large number of cattle were on the track which could, and therefore should, have been seen by the engineer in time to have avoided the collision. Counsel for the plaintiff has not cited a single case, and I have found none, where the facts from which the negligence in question was inferred were as meager as they are in the case at bar. It is true that statements are found in some of the cases which are broad enough, perhaps to cover the case at bar, but when the facts are looked into they are all stronger against the defendant than is the case here. I entirely agree with the author of Elliott on Railroads, where, in referring to certain cases, in volume 3, section 1205, it is said that they "state the doctrine entirely too strong." In *Kansas City, L. & S. K. R. Co.* v. *Bolson*, 36 Kan. 534, 14 Pac. 5, it is squarely held that merely to prove that an animal could have been seen near the track for a sufficient distance to have stopped the train when there is no evidence that the animal went onto the track ahead of the advancing

train is not sufficient to authorize a finding of negligence. The question then is: What was the duty of the engineer who operated the engine and train which struck and killed the mare in question in view of the evidence?

The evidence is not disputed in so far as the time of day when the accident occurred is concerned. Upon that point the evidence is undisputed that the accident occurred after sunset and before dark on or about June 21, 1908. Independently of plaintiff's evidence we take judicial notice of when the sun sets on any given day in this latitude and what system of measuring time is in general use. In this latitude on June 21st the sun sets, according to standard time, at three minutes past eight o'clock p. m. The plaintiff's testimony in that regard is therefore practically correct. We also take judicial notice of the fact that what is termed twilight follows immediately after sunset and continues until the sun has passed eighteen degrees below the horizon. We further judicially know that the sun sinks below the horizon at the rate of one degree of longitude for every four minutes of time, and that a degree of longitude in this latitude is slightly in excess of fifty-two miles. If the accident occurred, therefore, as plaintiff testified, namely, at twenty-four minutes past eight o'clock in the evening, the sun had passed below the horizon a distance of approximately 275 miles, and if the accident occurred, as defendant contends, namely, at eight-thirty p. m., the sun had passed below the horizon a distance of about 341 miles. If the evening was clear, therefore, as the evidence shows it was, it must have been twilight when the train was approaching the crossing, and no doubt the crossing could have been seen by the engineer in approaching it for at least some considerable distance. The evidence is likewise undisputed respecting the physical conditions surrounding the crossing. That there were wing fences five or six feet in height leading down from the track to the right of way fence there is no dispute; that the right of way was about fifty feet in width on either side of the center of the track is also shown by the evidence. It is also undisputed that the mare and colt were seen feeding in the lane some two hours before the accident, and that no one observed

them thereafter until after the accident. As I have already pointed out, there is no evidence whatever that the mare was on the track at any time before being struck by the train. Nor is there any evidence of any character · with regard to whether she was near the track for any length of time before being struck. Nor are there any presumptions with respect to her movements; that is, one may not presume that because an animal which is free to go from place to place at will was at any particular place for any particular length of time merely because it is found at a particular place dead at a particular moment of time. Can negligence be inferred on the part of the engineer merely because the conditions were such that he could have seen the crossing for a distance greater than was necessary for him to stop his train when there is no evidence whatever that the mare was either on the track or at a point so near it that she was in danger of being struck or injured by a passing engine or train? Under such circumstances is the presumption that the engineer was not guilty of negligence, that is, that he was exercising all due care, overcome? No doubt if it was the legal duty of the engineer to see the mare at all hazards, and if he failed in that duty, then he may be found guilty of negligence. As I understand the law, however, such a duty was not imposed upon the engineer, unless the mare was actually on the track or was so near to it that a passing engine would probably have injured her, or that she showed unmistakable signs of going onto the track or into a place of danger. It is not the law that because an animal may be on a public highway and in proximity of a railroad crossing, but not on or dangerously near the track, an engineer is guilty of negligence if he does not slacken the speed of his train in approaching the crossing or because he does not stop it before reaching it, although he may actually see the animal in the highway. In a recent case the Supreme Court of Idaho states the doctrine in the following words:

"In *Peoria, P. & J. R. R. Co.* v. *Champ*, 75 Ill. 577, the court held that the law imposes no obligation upon those in charge of a train of cars to stop the same upon discovering animals grazing near the railway track in anticipation that they may go upon the track and be injured, and the failure to do so is not negligence."

The court then proceeds:

"We think that the correct rule; and if an engineer observes an animal on the right of way and not on the track, and there are no indications that the animal will go upon the track before the train passes it, the failure to check the speed of the train or stop it is not negligence." *Wallace* v. *O. S. L. R. Co.*, 16 Idaho 103, 100 Pac. 904.

The court cites the following cases in support of the doctrine: *Yazoo & M. V. R. Co.* v. *Wright,* 78 Miss. 125, 28 South. 806; *Yazoo & M. V. R. Co.* v. *Whittington,* 74 Miss. 410, 21 South. 249; *Louisville & N. R. Co.* v. *Bowen* (Ky.), 39 S. W. 31; *Western Ry. Co.* v. *Lazarus,* 88 Ala. 453, 6 South. 877. The same doctrine is held in a recent case by the Supreme Court of Nebraska in *White* v. *Chicago, B. & Q. R. Co.*, 93 Neb. 736, 141 N. W. 1038, where a horse was killed at a public crossing, which crossing was in plain view and without obstruction for a mile or more. Indeed, this court has laid down the same doctrine in *Bunnell* v. *Railway Co.*, 13 Utah 314, 44 Pac. 927, where the law is stated in the third headnote thus:

"When cattle are in a highway near a railroad track, and appear quiet, an engineer is not bound to presume that they will suddenly run upon the track, but he must observe the track ahead of the train as constantly as his other duties will permit, and use every precaution to avoid injury to stock which is consistent with the safety of the passengers and train."

Any other rule would make it impracticable to operate passenger trains in the country with any considerable speed.

There are, no doubt, cases in which it is held that the evidence produced by the plaintiff in the case at bar is sufficient to authorize a finding of negligence. Most, if not all, of that class of cases, however, emanate from jurisdictions where there are statutes in force which make the mere killing or injuring of live stock by moving trains *prima facie* evidence of negligence, which *prima facie* case can be overcome only by affirmative evidence that the servants of the company exercised ordinary care in operating the train, or that the accident was unavoidable. Such statutes are in force in Florida, Georgia, North Carolina, Kentucky, Mississippi, North Da-

kota, South Dakota, Iowa, Washington, and now in Colorado, and perhaps in a few other states. See 2 Shearman & Redfield on the Law of Negligence (6th Ed. 1913), Section 432. The Mississippi statute went into effect after the decisions cited by the Supreme Court of Idaho from that state were referred to. In citing cases, therefore, some heed should be given to local statutes. In South Carolina the rule of presumptive negligence is enforced independently of the statute, but that state, so far as I am aware, is the only one in which courts enforce the rule in the absence of a statute. In case there is evidence, however, that animals were on or dangerously near the track, or that they showed unmistakable signs of attempting to pass onto or over it, and they, under such facts and circumstances are injured or killed by a passing train, then there arises an inference or presumption of negligence on the part of the engineer which must be overcome by affirmative proof that the injuring or killing of the animals could not, by the exercise of ordinary care, have been avoided. Such presumption now prevails in most of the United States. See authors and section last above cited.

The duty imposed upon the engineer in charge of a moving train in approaching a public crossing, or at a place where animals have the right to pass on or over the track, therefore, is to exercise ordinary care in keeping a lookout so as to avoid injuring animals that may be on or so near the track that their safety may be endangered by the passing train. Moreover, if animals are moving towards the track indicating a disposition to go onto or dangerously near it, the engineer cannot assume that they will not pass onto it, but he must timely check the speed of his train so as to avoid injuring them if that can be done by the exercise of ordinary care and without endangering the safety of the passengers. Nor can the engineer assume that animals, like reasoning beings, will assume a position of safety on the approach of the train, but in case such animals are on the track or so near it as to be in danger of being injured, or if they show a disposition to pass onto or over it, the engineer must exercise ordinary care in operating and managing his train so that injury to the animals may be avoided; and if there is sub-

stantial evidence to the effect that the animals were injured or killed under the circumstances just outlined, the jury may infer or presume negligence on the part of the engineer. There must, however, be some substantial evidence to that effect, or the presumption which always prevails against negligence and in favor of the exercise of ordinary care by all persons must prevail. In my judgment the evidence in this case relating to the first cause of action is insufficient to overcome the presumption aforesaid. As before pointed out, there is absolutely no evidence, nor any established fact or facts, from which it can legitimately be inferred that the mare was either on the track or so near it as to be in danger, nor that she manifested any signs that she was about to go onto or pass over the track at any time when the engineer could have stopped the train and avoided the collision. Whether such was or was not the case is left to mere conjecture. That is not enough. It may well be the fact that the engineer saw the mare feeding in the lane some distance from the track when he still was the required distance or more from her to have stopped the train, but in view that she was not on the track or so near to it as to be in danger, nor showed any indications of going onto the track, he did not check the speed of the train. But under the evidence he was not required to do so as I read the authorities; and his not having done so, therefore did not constitute negligence. If the failure to check the speed of the train, or the failure to stop it, in case the engineer actually saw the mare under the circumstances stated above, did not constitute negligence on his part, then it necessarily follows that his failure to check the speed of or to stop the train because he did not look and hence did not see the mare, as is assumed by counsel for plaintiff, likewise did not constitute negligence.

Nor is the fact important in this court that the defendant offered no explanation regarding the engineer's conduct. If the plaintiff made out a *prima facie* case the jury were not required to believe or to accept any explanation the defendant might have offered. The defendant did offer proof on several of the other causes of action, which, if true, or if believed by the jury, constituted a complete defense. The jury

apparently refused to believe defendant's witnesses as they had a right to do. If the defendant, therefore, thought the plaintiff had not made out a *prima facie* case, it could not affect either it or its rights by refraining to present any evidence explanatory of the engineer's conduct. Whether a *prima facie* case had been made out or not was matter wholly for the judgment of defendant's counsel. If they erred in their judgment, and the evidence would justify a finding against them, they must take the consequences. What fact or circumstance is there in this case from which it may be inferred that the mare went on the track, or in a place of danger, at any time when the engineer could have avoided the collision by the exercise of ordinary care? Of course, if it be assumed, as counsel assumes, that all that it is necessary to show is that the mare could have been seen in a public road somewhere near the crossing by the engineer while the train was still a half mile or more from the crossing, and that from that fact alone it may be inferred that he could have avoided the collision, but failed to do so, then I am wrong in my conclusion, and the verdict and judgment are right. In my judgment, however, such is not a legitimate or permissible inference from the evidence, and hence I think the evidence is insufficient to justify a finding of negligence upon the part of the engineer, and hence I think the judgment and verdict on the first cause of action should not prevail. In the foregoing conclusion, however, my Associates do not agree. In their judgment the evidence, that is, the facts and circumstances in evidence are sufficient to authorize a finding that the engineer was negligent in operating and managing the train which struck and killed the mare in question. While I am unable to yield assent to the judgment of my Associates, yet, in view that they constitute a majority of this court, their judgment must control. It follows, therefore, that the district court did not err in refusing to direct a verdict in favor of the defendant on the first cause of action.

Neither can defendant's counsel prevail with respect to the third cause of action. That cause of action was for the killing of a cow and heifer on the defendant's right of way

immediately north of and about 300 feet from the crossing at which the mare was killed, on a different date, however, and subsequent to the killing of the mare. Defendant insists that inasmuch as it is claimed by the plaintiff that the cattle guards and wing fences were defective, and for that reason the cow and heifer passed from the crossing onto the defendant's right of way, and that the action was not commenced within a year from the date of the accident, therefore the action was barred by the provisions of Comp. Laws 1907, Sec. 2877, subdiv. 1, which reads:

"An action for liability created by the statute of a foreign state or by the statute of this state other than a penalty or forfeiture under the laws of this state shall be begun within one year."

The foregoing contention is based upon Comp. Laws 1907, section 456x, which, in substance, provides that every railroad company which operates a railroad through lands owned by private owners must construct and maintain a sufficient fence along each side of the track, which fence must, at all public crossings, be connected with cattle guards. In case of failure to comply with the provisions of the statute, such company is required to pay all damages for the killing or injuring of domestic animals which are killed or injured because the fences or cattle guards are not constructed and maintained. Assuming, without deciding, that if the third cause of action were predicated entirely upon the provisions of the foregoing section, it would be barred by its provisions, yet the statutory ground was not the only one upon which the plaintiff sought to recover damages for the killing of the cow and heifer. In addition to the statutory ground the plaintiff also alleged negligence in operating the train, and in failing to keep a proper lookout, and in negligently failing to avoid killing the cow and heifer, and further alleged that the defendant was negligent in failing to maintain the cattle guards and the "approaches" thereto in proper repair, by reason of which failure and negligence the cow and heifer went onto the defendant's right of way and were killed. The right of action upon the ground of negligence in the particulars aforesaid was not barred.

Nor can defendant's contention prevail that no recovery can be had because the cow and heifer were wrongfully on defendant's right of way, and for that reason it owed no duty except to refrain from willfully and wantonly injuring or killing them. There would be merit to that contention if the cow and heifer had not come onto the right of way through defendant's wrong; that is, through its negligence in failing to keep the cattle guards and wing fences in proper repair and condition, or if not otherwise negligent. If, however, cattle get onto the right of way by reason of the defective condition of the cattle guards or the connecting fences, and without the fault of the owner, the company, ordinarily, is liable. Shearman & Redfield on the Law of Negligence (6th Ed. 1913), Sec. 424. Such a rule, however, merely reflects common sense. There was sufficient evidence to justify a finding that the connection between the cattle guards and wing fences was defective and out of repair, and that the defendant should have known of that fact, and that the cow and heifer went onto the right of way by passing through the defect existing between the cattle guards and the wing fences. There is also evidence of negligence in operating the train at the time in question. The contention, therefore, that the verdict and judgment in favor of the plaintiff on the third cause of action is erroneous cannot prevail.

The same result must also follow with regard to the fourth cause of action. There is at least some substantial evidence that the killing of the cow, which was killed at the same crossing where the mare was killed but a year later, resulted by reason of defendant's negligence. There is some substantial evidence that the cow was actually killed upon the track, and that she was discovered by the engineer before she was struck. It is quite true that the engineer testified to a state of facts which, if believed by the jury, would have completely exonerated him from all culpability, and would have been a complete defense. The jury, however, did not believe the defendant's witnesses in that regard, and found that the accident could have been avoided by the exercise of ordinary care. The evidence in support of that cause of action, therefore, differs from that produced on the first cause of action, in that

there is some substantial evidence that the cow was actually upon the track; that she was seen by the engineer before she was struck; and the jury refused to believe the testimony of the engineer that he was unable to avoid the accident. In view of that feature, which is controlling here, the judgment upon that cause of action must be affirmed.

This brings me to the plaintiff's appeal. It is contended that the court erred in not submitting to the jury the question of damages for the death of the colt. There is absolutely no evidence that the colt was ever near the railroad track at any time. The only evidence with respect to where the colt was on the evening the mare was killed is hearsay, but it is plaintiff's own evidence which was admitted without objection. It is as follows: The witness who testified for the plaintiff with respect to when he was informed that plaintiff's mare was killed by the train testified that the two tramps or hoboes who informed him that the mare was killed told him that:

"There was a mare killed over there on the right of way, and the colt would be apt to get killed, as it was running back and forth."

The witness said that after finishing his supper he went to where the mare was lying dead, but, he says, he did not see the colt. Plaintiff's son testified that he did not see the colt until the next morning when it was with two horses some distance from where the mare was killed, and was crippled; that they took it home and nursed it, but that it died in about ten days. This evidence is wholly insufficient to authorize a finding that the colt was injured by the train, or that it was otherwise injured by the defendant. The court, therefore, committed no error in not submitting the question respecting the injury to and death of the colt to the jury.

The court directed a verdict for the defendant on the fifth cause of action, and plaintiff insists that the ruling constitutes error. The animal in question, a horse, was killed at a private crossing, at which gates were maintained for the convenience of the landowner to pass from one side of the track to the other; his farm lying on both sides of the track. The evidence shows that the horse was killlled early one Sunday morning on

the right of way of the defendant near where the gate was maintained. From the evidence it also appears that the farm gate was open on the morning in question; it having been opened by some one, or as contended by plaintiff, by reason of the defective condition of the fastenings, that it might have been opened by the horse that was killed. At all events the horse, it seems, passed through the gate onto the right of way. If the gate fastenings were defective there is no evidence with respect to how long they were so, or that the defendant had notice of the defect. If they were defective the defendant would be entitled to notice, or, at least, to a reasonable time within which to discover the defect and to repair the gate before it would be liable for animals passing through it. 2 Shearman & Redfield on the Law of Negligence (6th Ed. 1913), section 424a. Plaintiff's counsel, however, contends that it was defendant's duty to see that the gate was kept closed, and that in failing to discharge that duty it was guilty of negligence. Such, however, is not the law in this jurisdiction. Comp. Laws 1907, section 456x1, provides that where gates are placed by a railroad company for the convenience of the landowner, "such owner shall keep such gates closed at all times when not in actual use," and if by reason of his failure animals are injured or killed, he cannot recover any damages. The plaintiff's counsel further insists that the track was straight and level for a long distance, and that the engineer, by the exercise of ordinary care, ought to have seen the horse in time to have slackened the speed of his train, and, if necessary, to have stopped it to prevent the killing of the horse; and, further, that it was the duty of the engineer to maintain a proper lookout to discover the horse or some other animals which might be on the crossing or right of way, Such, however, is not the law with respect to private farm crossings at which gates are maintained. The engineer, under such circumstances, was not bound to anticipate that the gate would be left open or that it would be opened by any one, and that the owner's stock would stray upon the right of way. He, therefore, was not required to maintain a strict or constant lookout for stray animals on the right of way. He was required to exercise ordinary care to avoid

injuring any such animals if there were any on the right of way after he discovered them. The evidence is wholly insufficient to authorize a finding that the engineer willfully or wantonly killed the horse in question, or that he failed to exercise ordinary care to prevent injuring it after he had discovered it on the right of way. In view that the undisputed evidence is all to that effect I cannot see how the plaintiff can recover upon that cause of action, and am of the opinion that the court committed no error in directing a verdict in favor of the defendant upon the same.

What has been said above also disposes of the exceptions to some of the instructions given, and to the refusal to give certain requests.

Since writing the foregoing opinion my Associates, for the reasons stated by them, have reached the conclusion that the judgment of the district court on the first, third, and fourth causes of action should be affirmed, and that, as to the fifth cause of action, the judgment should be reversed, and as to that cause a new trial should be granted. As to all other matters the judgment should be affirmed. Let such be the order and judgment. Plaintiff to recover costs.

McCARTY, J.

I concur in the affirmance of the judgment based on the first, third, and fourth causes of action. I am of the opinion, however, that the court erred in taking from the jury the fifth cause of action.

The record shows that the animals described in the first, third and fourth causes of action were killed in the daytime by defendant's trains at and near where its track intersects and crosses a public highway known as Burke Lane. The evidence, without conflict, shows that operatives of trains approaching Burke Lane from either direction in the daytime have, when they are within one-half or three-fourths of a mile of Burke Lane, a clear and unobstructed view of the crossing. And the undisputed evidence also shows that the distance required in which to stop a passenger train approaching the crossing from either direction at the rate of 35 or 40 miles per hour is from 1,000 to 1,320 feet. The facts

relating to the killing of the animal described in the first cause of action are about as follows: N. V. Ellis, a witness for the plaintiff, testified—and his testimony is not disputed in any particular—that at the time the mare in question was killed he resided within 200 or 300 yards of the railroad crossing at Burke Lane; that he was returning home from work one afternoon at about 6 o'clock, and saw a mare and colt belonging to plaintiff grazing in Burke Lane east of and a short distance from the railroad crossing; that soon after he arrived home on that occasion he was informed that a mare had been killed on defendant's right of way; that he ate his supper and "after sundown, but before dark, I went to Burke Lane crossing, and there saw the carcass of the mare I had seen feeding in Burke Lane about 6 o'clock p. m., lying on defendant's right of way near the railroad track a short distance south of the crossing." John Preece, the plaintiff, referring to the mare in question, testified:

"I had a horse killed and a colt damaged to the extent that it died. * * * I first knew of it the next morning. * * * I sent my son John down to see which mare it was. * * * When my son came home he brought the colt. * * * We tried every way to save him, but he died from the result of the accident."

John W. Preece, the plaintiff's son, testified that he saw the carcass of the mare herein referred to lying on defendant's right of way near the railroad track and about sixty feet south of the crossing; that he recognized it as his father's animal; that after the mare was struck by the train she was carried or thrown through the picket fence extending from the cattle guards at the crossing to the boundary line of the right of way; that "she had been thrown clean through that (the fence)—that was torn away, pickets and all;" that "the train that had hit her was going south, if a train did hit her;" that the "colt was outside of the right of way in Burke Lane —it showed evidence of injury, acted like it was crippled in the thigh." The record shows that the train which collided with the mare was going at the rate of thirty-five miles an hour.

While defendant alleged in his answer that the mare was

killed because of the negligence of plaintiff ''in permitting it
to run at large at a point on a public highway near the rail-
road of defendant,'' etc., no evidence was introduced tending
to support the allegation.  The evidence, however, does show
that the mare and colt, on the occasion in question, had, un-
known to plaintiff, escaped from an inclosure in which they
were being pastured by a third party for hire, and were graz-
ing along the highway in the direction of plaintiff's home.
The only question of fact over which there appears to be any
controversy is whether or no the trainmen who were operating
the train that collided with the mare saw, or, by the exercise
of ordinary care could have seen, the mare in time to have
avoided the accident.

Counsel for defendant, in their printed brief, say, referring
to the picket fence extending from the cattle guards to the
boundary ,line of the right of way, ''an animal standing be-
hind this picket fence could not have been seen by the engineer
approaching the crossing.''  And further:

''On both sides of the crossing approached there were hol-
lows from three to four feet in depth which were deep enough
to conceal a horse from view should it walk through them.''

John W. Preece, plaintiff's son, made certain statements on
cross-examination, which, considered separate and apart from
the balance of his testimony, seem to support counsel's ver-
sion respecting the inability of trainmen approaching the
crossing to see animals standing behind the wing picket fences
at the crossing or in the ''hollows'' beside the wagon road
where the approaches intersect defendant's right of way.  By
an examination of his evidence in its entirety on this point it
will be observed that he first described somewhat in detail the
physical conditions of the crossing and approaches of the
highway thereto, the height and kind of a fence extending
from the cattle guards to the boundary line of the right of
way, the lay of the ground on either side of the approaches to
the crossing, and then, as a conclusion, stated that an animal
on the opposite side of the fence from the approaching train
or standing in the ''hollow''. or depression on either side of
the wagon road at the crossing could not be seen by the train-
men.  I here remark parenthetically that the greater weight,

the overwhelming preponderance, of the evidence tends to show that trainmen on trains approaching Burke Lane highway from either direction have an unobstructed view of the crossing and the approaches thereto, and by keeping a lookout they can see cattle or horses that may be on the crossing or in the immediate vicinity thereof from the time their trains are within one-half mile of the crossing. In fact, it is the only conclusion permissible from the evidence when considered in its entirety. On re-direct examination this witness testified:

"There was nothing to make a hole except the road crossing. The country was generally level. Nothing to obstruct the view of a horse there at that time, nor any other time— nothing outside of that little fence; that is all the obstruction there would be. I think a man could see a horse along there."

Plaintiff testified:

"There were no fences, or buildings, or trees, or any obstructions of any kind coming from the north that would obstruct the view of this Burke Lane crossing within three-quarters of a mile—not one bush. An animal could be seen that distance."

Arthur Hess, a witness for plaintiff, testified in part as follows:

"I stepped from Burke Lane crossing north to the cut along the railroad track. To my best recollection it is about 700 steps to the first cut—approximately three feet to the step. * * * Coming south after leaving the second cut Burke Lane is in view nearly a mile, between half and three-quarters. * * * The railway track was two or three feet higher than the surrounding country at the crossing, and guard fences run from the railroad back, sloped down of course. They would not obstruct the view of animals anywhere on that Burke Lane crossing. East and west of Burke Lane crossing you could see as you approached out of this second cut coming south about a half a mile."

George Spackman, another witness for plaintiff, testified:

"There was no obstruction between this point three-quarters of a mile south of Burke's Lane. An engineer, or anyone else, would have perfect view of anything on the track or on the right of way in the vicinity approaching, all

through the country. Nothing to obstruct the view east and west either side of the railway tracks for half a mile anyway— no trees or anything, just pasture land. An animal anywhere in that vicinity would be in evidence from that point along the railway track; and likewise in Burke. Lane crossing, east and west of the crossing. That condition exists there for a good half mile. * * * The grade of the railway track at Burke Lane crossing is about two feet and a half high. * * * There were no barrow pits that would obstruct the view of a cow anywhere in that vicinity; nothing at all. * * * It [the fence] was about five feet high. It wouldn't obstruct the view of an animal on the road there.''

On cross-examination:

''I understand trains go anywhere from thirty to fifty miles an hour down there, and I say that an engineer would have a view of Burke Lane from cut two, which is over three-quarters of a mile from Burke Lane. * * * I don't think that if a horse was in behind the fence * * * that the fence would be an obstruction.''

George Hess, another of plaintiff's witnesses, testified:

''As near as I can describe the condition of Burke Lane crossing in 1908 and 1909, the view was plain all south of the crossing for three quarters of a mile, * * * and from the north it is about half a mile. * * * I don't think it [the fence] would obstruct the view of any animal along the street there, coming from the north. * * * There would be nothing to prevent an engineer from seeing east and west of Burke Lane crossing if he were looking out that way.''

Walter Read, a witness for defendant, testified:

That he is, and in 1908 (the year in which the accident occurred) was, a section foreman of defendant; that the railroad track and right of way where the animals involved in this action were killed is and was within his jurisdiction; that ''there were some willows down there by Burke Lane on the north side and west of the track; * * * in 1908 there were just a few on our right of way; * * * there wasn't enough on the right of way to obstruct the view—most of them were on Mr. Preece's field; unless an animal was right

in direct line with them there wasn't enough on the outside to obstruct the view.''

Counsel for the defendant, in their brief, say:

''The evidence is undisputed that after passing this second cut going toward Farmington the view of the crossing is unobstructed for a distance of about 2,145 feet, save     3 by obstructions on and near the crossing.''

They also concede that the mare involved in the first cause of action was killed by one of defendant's trains. They also say:

''At no time, however, has it been argued by appellant that the mare was not killed by the train. On the contrary, our argument   *   *   *   in our brief admits it.''

They also concede that the train at the time it struck the mare was going at the rate of thirty-five miles an hour. We therefore have a case in which it is conceded that one of the defendant's trains, while going at the rate of thirty-five miles an hour, collided with and killed plaintiff's mare at a point where the railroad track intersects and crosses a public highway, and at a time when the trainmen, if they kept a lookout, had an unobstructed view of the right of way and the crossing for a distance of 2,145 feet before the train arrived at the crossing; and where the evidence is all but conclusive, when weighed and considered in its entirety, that animals on the crossing, or in the immediate vicinity thereof, could be seen by the trainmen, provided they kept a lookout as they approached the crossing; and where there is no evidence tending to show negligence on the part of the owner of the animal killed. To hold under these circumstances that defendant is, as a matter of law, not liable would in effect make railroad companies in most cases immune from liability for the killing of stock at public crossings, regardless of how negligent or careless their trainmen may be on such occasions in the running of the trains.

It is suggested that there is no evidence that the mare was on or in close proximity of the track for any appreciable length of time before she was struck by the train, and hence negligence on the part of the trainmen ought not     4 be inferred. It is admitted that the mare was struck by

.the train; hence it necessarily follows that she was at least partially on the track. It is also admitted that the train was going at the rate of thirty-five miles an hour when it collided with the mare. A train going at that rate of speed would traverse the distance in which it could be stopped in less than twenty-six seconds. Therefore the only inference permissible is that the mare was on, in close proximity to, or was going toward the track, and was but a short distance from it when the train was in stopping distance of the crossing, and that the trainmen could and would have seen her in time to have stopped the train and avoided the accident if they had kept a proper lookout. Under the admitted facts and others established by the great preponderance of the evidence herein referred to the writer is clearly of the opinion that the jury were justified in finding that the operatives of the train on the occasion in question were negligent, and that such negligence was the proximate cause of the accident.

The court was right in refusing to permit a recovery for the injury to the colt. There is no evidence tending to show that the colt was struck by the train. The mere fact that it was found in the vicinity of the crossing the morning after its mother was killed, "crippled in the thigh," as shown by plaintiff's evidence, is not sufficient to justify an inference that it was struck by the train. Evidence introduced by plaintiff tended to show that soon after the mare was killed the colt was seen "running back and forth" on the highway. This would seem to indicate that the colt, at that time, was not crippled or otherwise seriously injured.

Regarding the third and fourth cause of action, I agree with Mr. Justice FRICK in his statement of the facts and the conclusions deduced therefrom by him.

In the fifth cause of action the animal, a mare, was killed by defendant's train of cars on defendant's right of way where the railroad track crosses the premises of a Mr. Spackman, who was the owner of the animal killed. There is evidence tending to show that the gate through which the mare got onto the right of way from the field in which she was being pastured was imperfectly hung, and that the fastenings thereon were defective. It seems from the evidence,

what there is on that point, that these defects were due to the mechanism of the gate and its fastenings, and the faulty way in which the gate was hung—fastened to the gate post. While the gate was erected and maintained by the defendant for the use and convenience of Spackman, it nevertheless was defendant's gate, and Spackman was in no sense responsible for the defects mentioned. Spackman testified that he "saw the animal in the field west of the track the day before she was killed. She had been there three or four days. * * * The gate was closed the night before (the accident) when I saw the animal." Walter Read, a section foreman, was called as a witness by defendant, and he testified in part that:

"The pasture was closed the night before the animal was killed and the fences were not down. * * * It was daylight when the animal was killed. * * * The mare was lying probably 150 or 200 feet from the gate."

The evidence without conflict shows that the track where it passes through Spackman's premises is straight, and that "no obstructions were in view of the engineer coming south towards the animal," and that "an animal could have been seen a mile or so." It is not shown that the presence of the animal on the right of way was due to any negligence of Spackman.

Regarding the duty of those in charge of a train approaching a farm crossing the rule, which we think is a wholesome one, is stated in 33 Cyc. 1213, as follows:

"In approaching private or farm crossings those in charge of the train must keep a lookout to avoid injury to animals which might be lawfully upon the crossing; but the company is not required to subordinate the operation of its road to the landowner's privilege of a crossing, and is not required to slow up or to stop its trains in order to ascertain if animals are upon or near the crossing." *Atchison, etc., R. Co.* v. *Conlon*, 9 Kan. App. 116, 57 Pac. 1063.

And again, on page 1215 of the same volume, it is said:

"Except where animals are wrongfully upon the right of way, it is as much the duty of the railway company to exercise ordinary care in discovering their presence as in avoiding injury after they are discovered. Those in charge of the train must keep a lookout for stock on or near the track, and if they fail to do so and animals are injured which could have been discovered in time to avoid the injury the company will be liable."

Many cases are cited in the footnotes which support this doctrine. The evidence shows, as the record now stands, that the operatives of the train could have seen the mare in question at a distance of a "mile or so" before the train arrived at the place of the accident if they had used ordinary care in keeping a lookout as the train approached and passed through the Spackman premises. The undisputed facts, I think, establish a *prima facie* case of negligence against the defendant.

For the reasons stated, I am of the opinion that the judgment as to the first, third, and fourth causes of action should be affirmed; and that as to the fifth cause of action it should be reversed, with directions to the lower court to grant a new trial as to that cause of action, and that plaintiff should recover his taxable costs on this appeal.

STRAUP, C. J.

I concur in the opinion of Mr. Justice McCARTY.